SACHS ET AL. *v.* BLEWETT.

[No. 26,341. Filed June 5, 1933. Rehearing denied
January 30, 1934.]

 

*Saul I. Rabb* and *Richard L. Ewbank,* for appellants.

*Telford B. Orbison,* for appellee.

FANSLER, J.—The appellee brought this action against the appellants by a complaint in two paragraphs, alleging in substance: That in June, 1928, the appellee was the owner of certain real estate in the city of Indianapolis; that she advertised said property for sale at auction; that it was announced before the sale that the successful bidder would be required to immediately make a deposit of ten per cent of the purchase price of the property as good-faith money and part payment on the property; the balance of the purchase price to be paid upon delivery of the proper conveyance and abstract of title; that when the bidding began one John Hauk made a bona fide bid of $12,100.00; that thereupon the defendants (appellants) bid $12,150.00; that Hauk then made a bona fide bid of $12,200.00, and that thereafter the defendants bid $12,225.00; that no other bids were made and that the auctioneer declared the property sold to the defendants for $12,225.00, the highest bid received; that plaintiff then demanded of the defendants a ten per cent deposit, and that defendants represented that they did not have the money with them with which to make the deposit, and that they did not have money in bank so that a check could be given; that plaintiff then informed them that a $500.00 deposit would be acceptable in lieu of a ten per cent deposit; that the defendants represented that they would pay her the $500.00 deposit at their place of business in the afternoon; that plaintiff relied upon said representations and believed them and consented to wait for the deposit money; that she went to their place several times and each time they made

some excuse for not paying; that defendants finally told her they did not believe the property was worth the amount of the bid; that they would only pay $10,750.00; that defendants had attended said auction sale for the fraudulent purpose of "blocking the sale of said property," and to make fraudulent bids therefor in order to prevent the sale to any honest bidder; that all of the bids made by the defendants were fraudulently made with the intention of cheating and defrauding the plaintiff and with no intention to comply therewith, and for the purpose of preventing the sale of the property; that the plaintiff and her agent, the auctioneer, were ignorant of the fact that the bids were false and fraudulent and believed them to be in good faith; that she was at all times ready to comply with the conditions of the sale as announced by the auctioneer; that John Hauk was a qualified bidder at said sale and was ready and willing to purchase the property at his bid of $12,200.00; that except for the fraudulent bid of the defendants he would have been declared the successful bidder and the property sold to him at that figure; that afterwards Hauk refused to purchase the property at the price offered, and that plaintiff made a diligent effort to sell the property for $12,200.00, and was finally forced to hold a second auction sale approximately three weeks after the first and that at said sale the property was sold for $10,350.00. By reason of said facts she claims damages for the difference between the amount of Hauk's bid at the first auction and the price at which the property sold and the expenses of the sale, interest, and attorney's fees. The second paragraph is practically identical with the first, except that it further alleges that the defendants conspired to cheat and defraud the appellee, believing that if they were able to prevent any honest bidder from purchasing the property and have themselves declared successful bid-

ders, they would be able to obtain the property for a sum much less than their bid because of the fact that it was necessary for the appellee to sell immediately in order to prevent foreclosure.

There was a demurrer to the complaint as a whole for want of facts, challenging its sufficiency upon the ground that "the complaint, stripped of its conclusions, does not state any facts at all. The alleged fraud and fraudulent intent is not set out. It is not shown that an agreement in writing, signed by the defendants, was entered into for the purchase of the said real estate. It is not shown that the defendants agreed, in writing, signed by them, to the terms of the said sale. It is not shown that any agreement or memorandum for the sale and purchase of the said real estate was ever signed by the defendants." The overruling of this demurrer is assigned as error.

Stripped of its conclusions and descriptive adjectives, the complaint alleges that the appellants orally agreed to purchase the real estate, and that they intended to repudiate the agreement with the object of procuring the real estate at a lower price. The promises and representations were only false in the sense that the appellants intended to and did refuse to comply with them and pay for the property as agreed.

It is provided by statute that no action shall be brought upon any contract for the sale of lands unless the contract or some memorandum or note thereof shall be in writing, signed by the party to be charged. Section 8045, Burns 1926, §8363, Baldwin's 1934.

It is obvious that no action would be brought upon oral promises and agreements to purchase real estate that were complied with. The statute denying an action upon such contracts refers to oral contracts and agreements for the sale of land which are not carried out.

Modern authorities universally agree that sales by auction are within the statute of frauds unless expressly exempted by the statute. 2 R. C. L. 1135.

It is not alleged that any of the appellants' promises or agreements were in writing, and in the absence of such an allegation in the pleading it must be presumed that they were oral. *Horner* v. *McConnell* (1901), 158 Ind. 280, 63 N. E. 472.

It is conceded that there is no liability under the contract because of the statute of frauds. The action is in tort and is based upon the alleged fraudulent misrepresentation of appellants' intention with respect to carrying out the contract at the time it was made. In determining whether the action will lie, it is not material that the contract which the appellants intended not to comply with was unenforcible, since if the action can be maintained at all there would be liability in tort even though the contract to purchase the property were in writing and enforcible. The only difference is that in the latter event the appellee would also have an action for damages for breach of the contract.

It is not alleged that there was any relationship of trust or confidence between the parties, nor are any circumstances shown which would entitle the appellee to place more than ordinary reliance in the promises of the appellants; nor is it alleged that the appellants violated any duty that they owed the appellee except such as was predicated upon their unenforcible oral contract.

If the complaint can be upheld, it must be upon the theory that where a contract is entered into with the intention of not carrying it out, an action will lie in tort for fraud because of the intention not to carry out the contract, independent of and in addition to any action that may lie upon the contract or for its breach.

The appellee asserts that a state of mind is a fact, and that a misrepresentation as to an intention to carry out a contract is a misrepresentation of a fact upon which an action for fraud may be predicated. There appears to be much conflict of authority upon the subject. 12 R. C. L. 261.

But there is no real conflict in the authorities in this state.

A fraudulent intent alone is no actionable. There must be some fraudulent, overt act, or failure to act when duty requires it, or a breach of trust or confidence, and such must be the efficient or proximate cause of injury.

"Fraud cannot be predicated upon acts which the party charged has a right by law to do, nor upon the non-performance of acts which by law he is not bound to do, whatever may be his motive, design or purpose, either in doing or not doing the acts complained of." *Franklin Insurance Co.* v. *Humphrey et al.* (1879), 65 Ind. 549.

This court has repeatedly said that actionable fraud cannot be predicated upon a promise to do a thing in the future although there may be no intention of fulfilling the promise. *Hayes* v. *Burkham* (1875), 51 Ind. 130; *Burt et al.* v. *Bowles et al.* (1879), 69 Ind. 1; *Bethell* v. *Bethell* (1883), 92 Ind. 318; *Balue* v. *Taylor et al.* (1893), 136 Ind. 368, 36 N. E. 269; *Robinson et al* v. *Reinhart et al.* (1893), 137 Ind. 674, 36 N. E. 519.

Two Indiana cases are cited as in conflict with this view, but they are not. Both were actions in equity to set aside a conveyance.

In *Basye* v. *Basye* (1898), 152 Ind. 172, 52 N. E. 797, a husband, relying upon his wife's representations and manifestations of love and affection, caused his real estate to be conveyed to her. She immediately left him, and it was demonstrated that she had no love or affec-

tion for him in the first instance, and that her protestations and manifestations were falsely made for the purpose of inducing the conveyance of property. A wife's love or lack of love for her husband is a present fact, demonstrable by every-day conduct, and from present love and affection a continuance thereof may ordinarily be anticipated. A husband and wife occupy a relationship necessarily involving trust and confidence. Where there is a violation of the trust and confidence, and where it is demonstrated that the fact of apparent love and affection has been misrepresented to the other trusting party to his injury, a court of equity will intervene to repair the damage.

In the case of *Webster et al.* v. *Adams* (1922), 79 Ind. App. 261, 137 N. E. 883, the appellee, old, enfeebled, distressed in mind, incompetent to transact business, and relying upon relatives, who professed interest in and good will toward him, deeded them his property upon their agreement to furnish him a home and care for him during the remainder of his life. They failed in their promises and he was granted relief. There was a relationship of trust and confidence between the parties. He was old and infirm and was over-reached. Equity requires that those who deal with the helpless shall not take advantage of their greater abilities or impose upon confidence reposed, and if there is the slightest proof of fraud will intervene.

In both of these cases it is said that an averment of an intention not to fulfill a contract at the time it is made, is an averment of a present fact, but in neither case is the fact of an intention not to perform the basis of recovery. In both the injured party rightfully reposed trust and confidence in the other, and in both cases the confidence was imposed upon. In both cases the court acted specifically to restore property parted

with under an executed contract. Both were of the type in which equity hastens to remedy an injustice.

This is not an action in equity to set aside a contract or to recover property fraudulently procured. It is an action at law to recover damages, and we find no authority in this state that will sustain the appellee's theory.

It was the failure of the appellants to carry out their contract to purchase the real estate which caused the damage. The damage would have resulted whether the appellants' failure was due to an honest inability to comply or a mischievous preconceived design not to do so. But the law did not require the appellants to carry out their agreement, and fraud cannot be predicated upon a failure to do that which there is no legal obligation to do.

An intention not to do that which the law does not require to be done, is not illegal, and such a negative intention cannot be the basis of an action for fraud unless there is also involved the breach of some other duty. It is not alleged that the appellants owed any duty to the appellee except such as was predicated upon their unenforcible oral contract.

A person is presumed to intend what is ordinarily and reasonably implied by his agreement. If the appellants' contract to buy had been in writing, they would be responsible in damages for its breach, regardless of their good or bad intention at the time it was made. But the action would arise out of the contract and not in tort. Since the contract was not in writing, the breach of it cannot be made the basis of an action, and the fact that at the time it was made they did not intend to carry it out, makes their liability for the breach no greater than if they had intended to comply with it.

Upon the appellants' bid being declared the highest,

they immediately declared that they would not comply with the terms of the sale by making a deposit, and, notwithstanding this notice that they did not intend to comply with her terms, the appellee elected to negotiate concerning a sale upon other and different terms, to be complied with at a later date, rather than accept a bona fide bid for a negligibly less amount. The promises and representations made to her thereafter were merely oral agreements for the purchase of real estate, and the failure to perform merely breached a contract which was unenforcible and for the breach of which there is no liability.

Whatever the appellants' intentions might have been, it is not alleged that they did anything which tended to deceive, coerce, or persuade the appellee to reject the Hauk bid, except that they promised to put up earnest money and to buy the property at a later date. But by the statute of frauds the appellee was warned that she must not rely upon this promise; that she would do so at her peril; and that if the promise were broken no action would lie. She alleges no other promise or representation of any character.

To permit a jury to hold a contracting party liable for an imputed intention, contrary to that expressed in his contract and by which he is bound in law, and thus make him liable and accountable beyond the liability and accountability required of him by his contract, where there are no intervening duties or obligations, would so confuse the rights and liabilities of contracting parties that one could never be certain of his liability, but must anticipate the construction that a jury might put upon his conduct in determining whether his liability might be in tort as well as in contract. Such a course would obscure the elementary distinction between tortuous and contractual liability and tend to nullify the statute of frauds.

The judgment is reversed, with instructions to sustain the appellants' demurrer to the complaint.

Treanor, J., dissents.

## DISSENTING OPINION.

TREANOR, J.—I think the petition for rehearing should be granted and judgment for the plaintiff below affirmed. In the writer's opinion the complaint states a perfect cause of action in deceit. The essential elements of legal deceit are (1) false representations (2) fraudulently made (3) under circumstances which entitle the plaintiff to rely thereon and (4) plaintiff's reliance upon the representations (5) to his damage. Harper on Torts, §217. That the averments of the complaint bring the instant case within the foregoing requirements is clearly shown by the summary of the allegations in the opinion of Bridwell, J., in *Sachs* v. *Blewett* (1931), (Ind. App.), 175 N. E. 676. The summary is as follows:

> "The averments of the complaint sufficiently show that the appellants represented to appellee that they are good-faith bidders for the property offered for sale, and that they had the present intention to purchase and would purchase same at the price bid by them; that this representation was false, and that their purpose and intention in bidding was to prevent the sale of said property to any good-faith bidder; that appellee relied on their representation and bid, and said bid was accepted; that, on account thereof, the sale of said property to a good-faith bidder who was willing and ready to pay the price bid by him was prevented; that appellants knew that foreclosure proceedings were imminent, and their purpose and intent was to bid more for said property than any good faith bidder offered, then refuse to take the property at the price bid, and afterwards acquire same from appellee at a price much less than the price bid, they believing this to be possible because of the appellee's financial condition and the desire on her part to sell in order to prevent foreclosure proceedings;

that appellee made a diligent effort to sell at a price
at least equal in amount to the amount bid in good
faith, by a bona fide bidder at the first sale, but
was unable to do so, and was compelled to and did
sell the property in question at a second public
auction sale for a sum much less than she would
have received for said property had it not been
for the fraudulent actions of the appellants."

It is true as stated in *Franklin Insurance Co.* v.
*Humphrey* (1879), 65 Ind. 549, "fraud cannot be predi-
cated upon acts which the party charged has a right
by law to do, nor upon the non-performance of acts
which by law he is not bound to do, whatever may be
his motive, design or purpose, either in doing or not
doing the acts complained of." This proposition fol-
lows from the requirement that fraudulent represen-
tations, in order to be actionable, must·be made under
circumstances which entitle the plaintiff to rely thereon.
Granting that the plaintiff was not legally justified in
relying upon the defendants' oral promise to buy the
real estate in question, it does not follow that she was
not justified legally in relying upon the good faith of
the bid of defendants made at a public auction. The
situation as presented by the averments in the com-
plaint involves two relationships which must. be kept
distinct. There is the relationship of vendor-vendee
involving the transaction of sale and purchase of the
real estate. There is also the relationship that arose
out of the fraudulent conduct of the defendants. It is
the latter relationship which is material in this case.

The appellant was a bidder at a public auction where
the whole situation presupposes good faith on the part
of bidders. The owner of the property is at the mercy
of the bidder, and this is especially true when, as in the
instant case, the property is real estate and requires a
period of time to complete the sale after the bidding
has been closed. The whole value of a public auction

rests upon the good faith of bidders and any conduct on their part which prevents a fair sale is wrongful. It is hard to conceive of any conduct more calculated to destroy the value of a sale for seller, or for other bidders, than bad faith bidding. The minimum standard of business honesty would require a duty of good faith bidding and the seller is justified in relying upon a bid as the representation of a present intention to buy; and in rejecting the next lower bid. Legal fraud is not predicated upon a special pre-existing relationship of trust and confidence. It is predicated upon the general duty, which the law imposes upon all persons, not to fraudulently misrepresent a fact to another person for the purpose of inducing action thereon. As already indicated the representation must be such that the party to whom it is made is justified in relying upon its truthfulness and injury must result from the reliance. I do not think it is material in the instant case that appellants owed no legal duty to carry out their oral promise to buy the real estate or that they owed no legal duty to execute a written promise. The legal duty which they owed, and which they violated, was a duty not to deceive the appellee by a false bid made for the purpose of preventing a sale to the next highest bidder. The appellee relied upon the false bid and thereby lost a sale to a good faith bidder whose bid was only a few dollars less than appellants' bid.

The majority opinion states that "it was the failure of the appellants to carry out their contract to purchase the real estate which caused the damage." In the judgment of the writer the foregoing reveals the fallacy of the reasoning of the majority opinion. The appellee is not seeking compensation for a loss legally caused by appellants' failure to carry out his oral contract; she is complaining of the loss occasioned by her failure to sell to the second highest bidder, and the facts alleged

show that this failure was caused by the fraudulent conduct of the appellants. We are not interested in appellants' oral promise as an element in a contractual relation; it is of significance only as the appellants' fraudulent device to prevent a sale to a good faith bidder who was ready and willing to carry out his bid.

Appellee's complaint alleges in substance that the appellant had attended the auction sale for the fraudulent purpose of "blocking the sale" of her property and to make fraudulent bids therefor in order to prevent a sale to any honest bidder; and that the bids of appellants were made with no intention of complying therewith and solely for the purpose of preventing a sale to any other bidder. Appellants' bid was an offer of a promise to buy the real estate and this offer became an oral promise when it was accepted by the auctioneer. It was a promise made with the intention of not performing and for the purpose of causing appellee to reject a good faith bid.

> "To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and fraud as could be made." *Herndon* v. *Durham & S. R. Co.* (1913), 161 N. C. 650, 656, 77 S. E. 683, cited in Harper, Law of Torts, §220.

It cannot be questioned that one who promises to do an act with an existing intention not to do it makes a misrepresentation of his state of mind; and "a present state of mind is a present fact." (*Basye* v. *Basye* [1899], 152 Ind. 172, 52 N. E. 797.) An arbitrary rule of law might not allow the same legal consequences to follow a misrepresentation of an existing state of mind that follow other misrepresentations of fact, but the denial of the legal consequences cannot change the reality that a state of mind is a fact. At the present time, however, the overwhelming weight of authority recognizes that

a misrepresentation of a present state of mind is to be treated as any other misrepresentation of fact.

"The weight of authority holds that fraud may be predicated on promises made with an intention not to perform the same, or, as the rule is frequently expressed, on promises made without an intention of performance. It has been said that when a promise is made, the promisor, by necessary implication, asserts a present and bona fide intention to perform, and if, therefore, the intention to perform does not exist, there is a misrepresentation of fact upon which fraud may be predicated, the gist of the fraud in such a case being not the breach of the agreement to perform, but the fraudulent intent of the promisor and the false representation of an existing intention to perform, when such intent did not in fact exist; and the courts have pointed out that the state of the promisor's mind at the time he makes the promise is a fact, and one which is exclusively within his own knowledge; and if he represents his state of mind, i. e., his intent, as being one thing, whereas it is the opposite, he misrepresents a then existent fact." 51 A. L. R. 63. See numerous citations in notes, p. 63 et seq.

The opinions of this Court prior to that in *Basye* v. *Basye, supra,* do not seem to distinguish between a promise as a representation of a present intention to perform and as a representation that the performance of the promise will occur in the future.[1] The latter cannot be distinguished in fact or in legal significance from the promise to perform. The right of the promisee to performance is neither enlarged nor restricted by the fraudulent character of the promise and the duty of the promisor to perform is not affected thereby. Consequently the failure to perform a promise does not constitute fraud even though the promisor had an exist-

---

*Note 1.* "It is true that a promise to do a thing in the future is not fraud, although there may be no intention of fulfilling the promise; for fraud consists in the misrepresentation of an existing fact. *Fouty* v. *Fouty* (1870), 34 Ind. 433; *President, etc.,* v. *Hamilton* (1870), 34 Ind. 506; *Burt* v. *Bowles* (1879), 69 Ind. 1." *Bethell* v. *Bethell* (1884), 92 Ind. 318, 324.

ing intent not to perform when the promise was made. The fraud, if any, is tied inseparably, in fact and in law, with the misrepresentation of intent; and there cannot be any cause for redress on account of the fraud unless injury legally resulted from the misrepresentation. Consequently, Baker, J., in *Basye* v. *Basye, supra,* correctly stated that "to permit a recission for fraud by one who has no ground for complaint except an unfulfilled promise, a broken contract, would obscure elementary distinctions between remedies and tend to nullify the statute of frauds." For an injury legally to result from a misrepresentation of fact the party affected must reasonably rely upon the misrepresentation and the injury complained of must result from the reliance. Actual injury resulting from a reliance upon the misrepresentation is an essential element of a cause of action in fraud; and it necessarily follows that the injury in respect to which relief is sought in a proceeding based upon fraud cannot be the injury resulting from "an unfulfilled promise, a broken contract."

It is clear that *Basye* v. *Basye, supra,* recognizes that a promise to do an act is a representation of a present intent to do the act and that such representation is one of fact. Also, the opinion makes it clear that it is fraudulent to misrepresent one's present intention by a false promise. The writer cannot see anything in *Basye* v. *Basye* or in *Webster* v. *Adams* (1923), 79 Ind. App. 261, 137 N. E. 883, to negative the plaintiff's right to recover on the facts of the instant case. Both of these earlier cases recognize that a false promise is a fraudulent misrepresentation of a present fact and certainly they do not foreclose the question of a promisee's right to recover on a fraudulent promise when the injury complained of is the result of relying upon the false promise and does not relate legally to the failure to perform the promise.

Appellants urge that a recognition of appellee's right to recover would effect a "northwest passage around the Statute of Frauds." It is true that the fraudulent device used to deceive the appellee took the form of a promise to buy real estate but appellee is not seeking to enforce the promise. If appellee's action were predicated on appellants' promise, as such, and if she were relying upon the fraudulent character of the promise to take it out of the Statute of Frauds there would be substance in the "northwest passage" suggestion. This would be true because the full prohibitive force of the Statute of Frauds is directed against the enforcement of oral promises and there is nothing in the policy or provisions of the Statute upon which to base a distinction between good and bad faith promises. But the courts have gone far in limiting the effect of the provisions of the Statute in order to prevent its being used to perpetrate fraud and have not evidenced the slightest tendency to enlarge its scope to cover transactions not expressly included when the result would be to make fraud effective.

In the opinion of the writer the transaction upon which appellee's suit is based does not come within the purview of the Statute of Frauds and the writer cannot see how a recognition of appellee's right to recover can be contrary to the letter, spirit or policy of the Statute. Furthermore, in the opinion of the writer, a denial of the existence of a cause of action would be out of harmony with the judicial policy of this Court in respect to injurious acts of fraud. This Court has consistently refused to confine actionable fraud to any particular acts or type of conduct. In *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432, 122 N. E. 662, the appellant insisted that liability for fraud could not be predicated upon an expression of opinion and we find that text writers and courts have frequently made the gen-

eral statement that opinion does not constitute legal representations.[2] But this Court refused to allow itself to be fettered by a general statement when an expression of opinion did in fact constitute an element in fraudulent conduct. The following excerpts from the opinion by Myers, J., are quite instructive and in harmony with the traditional attitude of this Court:

"Appellants insist that all allegations in the complaint relied on to show fraud, for the most part, are mere expressions of opinion; that they were not statements of existing facts; that appellee had an equal opportunity with appellants to know or learn the facts; that he was in a better position to know his real condition than either of the appellants. . . . The statements set forth in the pleading give some foundation for appellants' contention, but when the nature of the representations and meaning of the language used in the complaint as a whole is considered and applied to the subject matter here in controversy, the objections must fail. In the absence of a general rule applicable alike to all cases of fraud, each case, to a large extent, must be determined upon its own facts. The mere fact that a statement takes the form of an expression of opinion is not always conclusive, for, as the question is now presented, it must be interpreted by the facts and surrounding circumstances shown by the complaint. The rule that actionable fraud cannot be based upon the mere expression of an opinion has been qualified until now an expression of an opinion may amount to fraud, where it is a mere contrivance of fraud, or if the person to whom it was expressed has justly relied on it and has been misled, or when it is coupled with other circumstances. 12 R. C. L. 248, §16." . . . "We therefore conclude that the complaint in the instant case shows the essential elements necessary to state a cause of action. These elements are representations, falsity, scienter, deception and injury."

Note 2. "The general proposition of law is that the representation must consist of matter of fact; and the word 'fact' is here used in distinction, inter alia, from opinion. Opinion then, generally speaking, does not constitute a legal representation." Bigelow, The Law of Fraud, p. 473, §3.

In the opinion of the writer to hold that a misrepresentation of fact cannot be made the basis of an action for fraud because the misrepresentation of fact takes the form of a false oral promise to buy land, involves a misapplication of the Statute of Frauds and utterly confuses the elementary distinctions between the law of torts and contracts.