Timothy JONES, Appellant–Plaintiff,

v.

**INDIANA BELL TELEPHONE CO., Appellee–Defendant.**

No. 87A01–0608–CV–367.

Court of Appeals of Indiana.

April 26, 2007.

Trent Thompson, Salem, IN, Attorney for Appellant.

Rebecca J. Maas, Kyle B. Dehaven, Smith Fisher Maas & Howard, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

In this negligence case, Plaintiff Timothy Jones appeals the trial court's grant of Defendant Indiana Bell Telephone Company's d/b/a Ameritech ("Indiana Bell") Motion for Judgment on the Evidence following Jones's presentation of the evidence. Concluding that Indiana Bell owed Jones a duty of reasonable care but that Jones's evidence in this case is not sufficient to establish a breach of that duty, we affirm the trial court's grant of Indiana Bell's motion for judgment on the evidence.

### Facts and Procedural History

On December 18, 1997, Jones was doing a cable equipment upgrade for Sentry Cable, a cable TV provider that later became Adelphia, in Newburgh, Indiana. Jones, who had been doing this type of work for approximately twenty years and was aware of the associated dangers, was working as a subcontractor on this project.[1] On this date, Jones, wearing the appropriate safety equipment, climbed a telephone pole, which was owned by Indiana Bell, in order to access the cable TV line. The cable TV line was located approximately one foot above the telephone line. After completing his work on the cable TV line, Jones started to climb down the pole. On his way down, Jones grabbed the telephone line, which he described as holding onto the rung of a ladder. At this point, the telephone line— which was attached to the pole via a clamp, nut, and bolt—detached from the pole, causing Jones to fall approximately twenty feet to the ground. Jones broke his ankle and underwent surgery to repair it.

In May 2002, Jones filed a Complaint against Indiana Bell in Warrick Circuit Court alleging negligence.[2] A jury trial was held in July 2006. At trial, Jones testified that as he climbed the pole on December 18, 1997, he did not detect any problems with either the telephone line or the clamp, nut, and bolt. Jones also acknowledged that he had no evidence that

---

1. The record shows that Jones was working as a subcontractor for World Bridge Broadband, which was the company that had the cable upgrade contract with Sentry Cable/Adelphia. 2

2. According to Jones, a complaint was originally filed in 1999 in Cook County, Illinois, but was later re-filed in Warrick Circuit Court by agreement. Jones did not include a copy of either complaint in his appendix. Nevertheless, we assume that the complaint alleges a cause of action for negligence.

Indiana Bell knew that there was anything wrong with the pole, telephone line, or clamp, nut, and bolt prior to his fall. At the conclusion of Jones's presentation of the evidence, Indiana Bell moved for judgment on the evidence "based upon the ... absence of any evidence of a breach of duty as the duty is established in Indiana law." Appellant's App. p. 7. Indiana Bell directed the trial court to the case of *Sowers v. Tri–County Telephone Co.*, 546 N.E.2d 836 (Ind.1989), *reh'g denied.* After argument from both of the parties, the trial court stated:

> Well, my research, understanding of a duty, uh, between parties it's-it's either created contractually or it's created as [a] matter of common law. Uh, apparently there was some kind of a contract between the parties in this case, uh, Adelphia or ... and maybe the phone company, a user agreement, but the Plaintiff chose not to present that contract so I can't, don't have any idea what that says, which leaves us only with whether the common law duty exists. Uh, and I just don't think the Plaintiff has made his case on the common law duty, so I'm going to grant the Defendant's motion for directed verdict and enter Judgment for the Defendant.

Appellant's App. p. 16–17. Jones now appeals.

### Discussion and Decision

■■■ Jones contends that the trial court erred in granting Indiana Bell's motion for judgment on the evidence. In reviewing a challenge to a ruling on a motion for judgment on the evidence, our standard of review is the same as it is for the trial court. *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466–67 (Ind.2003). That is, judgment on the evidence is prop-

er only "[w]here all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence...." Ind. Trial Rule 50(A). When the evidence, together with the reasonable inferences to be drawn therefrom, would allow reasonable people to come to differing conclusions, then judgment on the evidence is improper. *Sharp*, 790 N.E.2d at 467.

■■■ To prevail on a theory of negligence, Jones must prove that: (1) Indiana Bell owed him a duty; (2) Indiana Bell breached the duty; and (3) his injuries were proximately caused by the breach. *See Winchell v. Guy*, 857 N.E.2d 1024, 1026 (Ind.Ct.App.2006). Indiana Bell moved for judgment on the evidence on grounds of insufficient evidence to establish breach of duty, and the trial court granted the motion because Jones had not "made his case on the common law duty." Appellant's App. p. 17. Therefore, we address both duty and breach in this appeal. Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Sharp*, 790 N.E.2d at 466. Whether an act or omission is a breach of one's duty is generally a question of fact for the jury, but it can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts. *Id.*

On appeal, the parties dispute the applicability of the Indiana Supreme Court's opinion in *Sowers*, 546 N.E.2d at 839, which involved a telephone utility, the employee of an independent contractor, and a discussion of both duty and breach. While Indiana Bell argues for the applicability of *Sowers*, Jones argues that landlord-tenant principles,[3] and not *Sowers*, should apply.

---

**3.** In support of this argument, Jones asserts that the "cable TV provider for whom Jones

was providing the upgrade obtained the space on the telephone pole where the cable TV line

In *Sowers*, Tri–County Telephone Company hired Covered Bridge Tree Service to trim trees located near its telephone lines and clear a right of way in order to ease the work of crews mounting cable television lines on the same poles. While trimming trees, Covered Bridge employee John Sowers fell into an abandoned manhole, injuring him. Tri–County did not own the land on which the manhole was located; however, it was undisputed that Tri–County had a prescriptive easement on the land. Sowers sued Tri–County for negligence, and the trial court granted summary judgment in favor of Tri–County. On appeal, this Court reversed, holding that

> the duty which Tri–County owed to John Sowers was to render safe the area of land reasonably necessary to accomplish the task of removing tree limbs.... If the manhole was on [the property where Covered Bridge's employees should have been expected to walk], then Tri–County breached its duty to business invitees by not inspecting that area and warning of the uncovered manhole.

*Sowers v. Tri–County Tele. Co.*, 512 N.E.2d 208, 210–11 (Ind.Ct.App.1987) (footnotes omitted), *trans. granted.* Our Supreme Court granted transfer and "conclude[d] that the duty of inspection and warning that the Court of Appeals im-

posed upon Tri–County cannot be justified." *Sowers*, 546 N.E.2d at 839.

Our Supreme Court first noted that a landowner or occupier is under a duty to exercise reasonable care for the protection of business invitees and that the employees of independent contractors are business invitees. *Id.* at 838. The court then pointed out that Tri–County was not a traditional landowner or occupier because it did not own the land on which the manhole was located. *Id.* The court continued:

> Because Tri–County is not a traditional landowner or occupier ..., it is necessary to ask what legal duty should flow from the company to its business invitees. That question involves consideration of more than just foreseeability of possible harm; it involves consideration of legal and social policies which include the foreseeability and likelihood of the injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant.

*Id.* Applying these principles, the court concluded that the likelihood of a business invitee entering the area around one of Tri–County's easements and injuring himself in a similar accident was small and that

---

was attached pursuant to a Rental or Lease Agreement with the telephone company." Appellant's Br. p. 3. However, as the trial court noted, Jones did not produce this alleged Rental or Lease Agreement at trial. In addition, the evidence that Jones did produce on this topic was not specific to Indiana Bell and Sentry Cable/Adelphia. At trial, Jones's attorney read into evidence portions of the depositions from two Indiana Bell representatives. When asked if it was standard for a cable company to compensate a telephone company for using its pole, James DeVita responded, "I understand there would be a lease of some kind, a rental. I don't know how they run if they run for the life of the

pole or how they do that." Tr. p. 126. And when asked whether under "industry standards in general, would it be typical for other utilities who attach to the telephone company to compensate them for the use of their pole," Paul Looney responded "yes." *Id.* at 126–27. This testimony is not evidence of any alleged rental agreement in this case.

This case is to be distinguished from the case of *Cox v. Northern Indiana Public Service Co.*, 848 N.E.2d 690 (Ind.Ct.App.2006), where evidence was introduced of a "pole sharing agreement" between an electric company and a cable provider, and the "pole sharing agreement" set forth the electric company's duty.

[w]hile special construction projects might predictably generate use of the easement, it is more likely that the easement would go unused for years at a time, broken only by the occasional necessity to effect repairs. By contrast, we would place a great burden on a telephone utility by requiring it to conduct regular inspections of all its easements for the sole purpose of discovering possible hazards.

*Id.* (footnote omitted). As such, the court held that Tri–County did not have a duty to inspect and warn and that the boundaries of Tri–County's duty of reasonable care to its business invitees "must be defined from the utility's own use of the easement." Id. at 839. The court noted that other than occasional entries to effect repairs, Tri–County's only occupation arose through sending people like Sowers to trim vegetation. "To the extent that Tri–County learned of dangerous conditions near its poles through these visits, of course, it had a duty to warn future invitees." *Id.* (citation omitted). In the absence of such evidence, our Supreme Court concluded that "Tri–County has not breached its duty of reasonable care to [Sowers]" and affirmed the trial court's grant of summary judgment in favor of Tri–County. *Id.*

We acknowledge that the facts of *Sowers* are distinguishable from the facts of this case. That is, in *Sowers,* the telephone utility itself hired the tree service company, whose employee was then injured while on the telephone utility's easement. Here, Indiana Bell was allegedly renting space on its telephone poles to the cable company, whose subcontractor was then injured on Indiana Bell's telephone pole. Despite these factual differences, we believe that the policy reasons articulated in *Sowers* are equally applicable to this case, making the duties owed the same. *Sowers* first acknowledged that a telephone utility is a special breed in that it is not a traditional landowner or occupier. *Id.* at 838. In addition, *Sowers* acknowledged that a telephone utility does not often access its property, except for the occasional necessity to effect repairs. *Id.* Because of these things, *Sowers* concluded that a great burden would be placed on a telephone utility if it were required to conduct regular inspections of its property for the sole purpose of discovering possible hazards. *Id.*

Applying the policy considerations behind *Sowers* to this case, we conclude that Indiana Bell owed a duty of reasonable care to its invitees, which included Jones, and that this duty did not include the duty to inspect and warn. However, to the extent that Indiana Bell learned of dangerous conditions on its poles, it had a duty to warn its invitees. The evidence in this case is that as Jones, an experienced cable installer, climbed the telephone pole on December 18, 1997, he did not detect any problems with either the telephone line or the clamp, nut, and bolt. In addition, there is no evidence that Indiana Bell knew that there was anything wrong with the pole, telephone line, or clamp, nut, and bolt prior to Jones's fall. As such, the evidence is not sufficient to prove the element of breach. Because the evidence does not allow reasonable people to come to differing conclusions on the issue of whether Indiana Bell breached its duty of reasonable care to Jones by not inspecting the pole, telephone line, and hardware in the absence of information that there was anything wrong, the trial court properly entered judgment on the

evidence in favor of Indiana Bell.[4]

Affirmed.

BAILEY, J., and BARNES, J., concur.

4. Jones also argues that the doctrine of *res ipsa loquitur* applies. However, Jones failed to raise this doctrine before the trial court and has therefore waived this issue for appel-

late review. *See Blackwell v. Dykes Funeral Homes, Inc.,* 771 N.E.2d 692, 697 n. 2 (Ind. Ct.App.2002), *reh'g denied, trans. denied.*