

ATTORNEY FOR APPELLANTS

Joseph G. Striewe
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Patrick A. Shoulders
Wm. Michael Schiff
L. Katherine Boren
Ziemer, Stayman, Weitzel &
Shoulders, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Grady B. Jones and Susan R. Lockwood, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Oakland City University Founded by General Baptists, Inc. and Ray G. Barber, <br><br> *Appellees-Defendants.* | April 18, 2019 <br><br> Court of Appeals Case No. 18A-PL-2994 <br><br> Appeal from the Gibson Superior Court <br><br> The Honorable Robert R. Aylsworth, Special Judge <br><br> Trial Court Cause No. 26D01-1712-PL-1876 |

**Najam, Judge.**

## Statement of the Case

Grady B. Jones and Susan R. Lockwood appeal the trial court's judgment on the pleadings in favor of Oakland City University Founded by General Baptists,

Inc. ("OCU") and Ray G. Barber. Jones and Lockwood raise three issues for our review, which we restate as the following three issues:

1. Whether the trial court erred when it entered judgment on the pleadings on two counts of fraud in the inducement, which judgment the court based on integration clauses in the parties' contracts.

2. Whether the trial court erred when it entered judgment on the pleadings on a count of retaliatory discharge, which count was premised on OCU's termination of Jones' and Lockwood's employment after they had orally reported on the misuse of public funds by OCU officers.

3. Whether the trial court erred when it entered judgment on the pleadings on various theories of at-will employment.

[2] Although we disagree with the trial court's reliance on the integration clauses on the first issue, we nonetheless reach the same conclusion on that issue because the pleadings show that the alleged misrepresentations relied on by Jones and Lockwood were statements of current intentions made by OCU officers during their contract negotiations. As a matter of Indiana law, such statements do not establish a basis for fraud. Accordingly, we affirm the trial court's judgment on the first issue. We also affirm the trial court's judgment on the other issues in this appeal.

On December 8, 2017, Jones and Lockwood filed their complaint against OCU and Barber, which Jones and Lockwood later supplemented and amended. On August 28, 2018, Jones and Lockwood filed their supplemented second amended complaint, which provided in relevant part as follows:

> Count I Fraud in the Inducement . . . : Jones
>
> 1. On or about March 2, 2017, Jones was contacted with regard to potential future employment by [Barber,] President of OCU.
>
> 2. Between March 13, 2017[,] and June 5, 2017, Jones engaged in discussions with regard to employment by OCU as its Vice President for Advancement ("VPA") addressing the terms and conditions of employment with representatives of OCU, including, but not limited to:
>
>> A. [Barber], its President;
>>
>> B. C. William Blackburn . . . , its Chairman of the OCU Board of Trustees;
>>
>> C. John Dunn . . . , its Special Advisor to the OCU Board of Trustees.

---

[1] We agree with OCU and Barber that, among other deficiencies, Jones and Lockwood "have failed to include numerous relevant materials in their Appellants' Appendix," contrary to Indiana Appellate Rule 50(A)(2). Appellees' Br. at 5 n.1. We thank OCU and Barber for their submission of an Appellees' Appendix to supplement the Appellants' Appendix.

3.  On or about May 18, 2017, during discussions referenced herein, Barber, Blackburn, and Dunn orally represented to Jones that his employment would be contingent on his agreement to serve as VPA for a period of five years, during which time his duties would include preparing his prospective successor to accede to VPA upon his retirement.

4.  Prior to accepting the VPA position at OCU, Jones orally advised Barber that he had been selected to fill the position of Associate Vice Chancellor for Advancement at Troy University, in Troy, Alabama.

5.  On or about May 31, 2017, Jones and Barber executed a Provisionary Administrative Member Agreement ("Employment Agreement"), whereby the parties agreed to a salary and specific duration of employment commencing June 5, 2017[,] and ending May 31, 2018.

* * *

9.  The terms of the Employment Agreement do not contemplate employment of Jones for five years.

10.  The terms of the Employment Agreement are inconsistent with the representations made to Jones by Barber, Blackburn, and Dunn during the hiring process.

* * *

13.  The Employment Agreement states[:]  "Either party may terminate this Agreement for any reason without cause upon thirty (30) days prior written notice to the other party." [("Termination Clause.")]

14. The contents . . . of the Employment Agreement describe an at-will relationship.

15. The [Termination Clause] . . . is inconsistent with the oral representations of Barber, Blackburn, and Dunn during the hiring process of Jones with regard to the specific duration of employment.

* * *

24. The Employment Agreement states[:] "Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and it supersedes all prior oral or written agreements[,] commitments or understandings with respect to the matters provided for herein . . . ." ("Integration Clause").

* * *

32. Barber intended that Jones' nature of employment be at-will.

33. On October 2, 2017, Barber hand-delivered written 30-day notice to Jones that Jones' employment was terminated "without cause" ("Termination Notice").

34. Jones is an alumnus of OCU.

35. Jones was 64 years of age at the time of the transaction described herein.

36. Barber is a clergyman in the General Baptist Church.

37. Jones was acquainted with Barber in his capacity as a clergyman of the General Baptist Church in excess of 40 years.

38. Jones reposed a confidence in Barber that Barber's actions would be consistent with his oral representations and assurances regarding the specific duration of Jones' employment made during [the] hiring process.

* * *

41. Jones was induced to execute the Employment Agreement by the oral representations and assurances of Barber, Blackburn[,] and Dunn to accept employment of specific duration for a period of not less than five years as VPA.

42. Jones relied on the oral representations [and] assurances of Barber, Blackburn[,] and Dunn and agreed to accept employment consistent with the terms and conditions of employment represented, which induced him to believe he would be employed by OCU in the capacity of VPA for a period of five years.

43. Jones had a right to rely on the oral representations of Barber, Blackburn, and Dunn made prior to the execution of the Employment Agreement[] with regard to the term of his employment . . . .

44. Based on the oral representation . . . Jones advised representatives of Troy University that he was accepting OCU's offer of employment.

45. The actions of Barber described herein constitute fraud in the inducement.

* * *

Count II Fraud in the Inducement . . . :  Lockwood

\* \* \*

51.  On or about April 2017, Lockwood was contacted with regard to potential future employment by OCU by Robert Yeager, who was then the Vice President For Administration and Finance ("VPAF") of OCU.

52.  Between April[] 2017 and July 7, 2017, Lockwood engaged in discussions with regard to employment by OCU as its [VPAF] addressing the terms and conditions of employment with representatives of OCU, including, but not limited to:

    A.  [Barber];

    B.  Daniel Dunivan . . . , its Provost;

    C.  [Blackburn].

53.  Prior to accepting the VPAF position, Lockwood orally advised Barber that she held a position of assured permanency of employment with the Indiana Department of Correction[.]

\* \* \*

55.  Prior to accepting the VPAF position, Barber orally assured Lockwood that her employment would be permanent.

56.  On or about July 10, 2017, Lockwood and Barber executed a Provisionary Administrative Member Agreement ("Employment Agreement[ ]2"), whereby the parties agreed to a salary and a term of employment ending on May 31, 2018.

57. The terms of the Employment Agreement[ ]2 contemplate employment of Lockwood for a specific duration.

58. The oral representations and assurances of Blackburn were not reduced to writing regarding . . . [her employment] for a specified period.

59. Lockwood intended to accept OCU's offer of permanent employment.

* * *

63. The Employment Agreement[ ]2 states [a Termination Clause identical to Jones' Termination Clause].

64. The contents of [the Termination Clause] describe an at-will relationship.

65. The contents of [the Termination Clause] are inconsistent with the oral representations of Barber, Blackburn, and Dunivan during the hiring process of Lockwood . . . .

* * *

72. The Employment Agreement[ ]2 states [an Integration Clause identical to Jones' Integration Clause].

73. The Integration Clause disavows OCU's obligation to comply with oral representations made by Barber, Blackburn, and Dunivan during the hiring of Lockwood.

* * *

76. Barber was aware of the terms contained in [the Termination Clause and the Integration Clause] prior to presenting [the Employment Agreement] to Lockwood for execution.

\* \* \*

80. Barber held a position of superior knowledge over Lockwood with regard to the content of the Employment Agreement.

81. Barber intended that Lockwood's nature of employment would be at-will.

82. On October 2, 2017, Barber hand-delivered written 30-day notice to Lockwood that Lockwood's employment was terminated "without cause" ("Termination Notice").

83. Lockwood is an alumna of OCU.

84. Barber is a clergyman in the General Baptist Church.

85. Lockwood reposed a confidence in Barber that Barber's actions would be consistent with his oral representations and assurances regarding the specific duration of Lockwood's employment made during [the] hiring process.

\* \* \*

87. Lockwood was induced by the oral representations and assurances of Barber, Blackburn[,] and Dunivan to accept employment consistent with the terms and conditions described herein and advised Barber that she was ready and willing to serve in the capacity of VPAF until retirement.

88. Lockwood relied on the oral representations [and] assurances of Barber, Blackburn[,] and Dunivan and agreed to accept employment under those terms and conditions described herein, which induced her to believe she would be employed by OCU in the capacity of VPAF indefinitely.

89. Lockwood had the right to rely on the oral representations of Barber, Blackburn, and Dunivan made prior to the execution of the Employment Agreement[] with regard to the term of her employment by OCU.

90. Lockwood was induced by the oral representations of Barber, Blackburn, and Dunivan to accept permanent employment by OCU, to her detriment.

91. Lockwood's reliance on the oral representations and assurances of Barber, Blackburn, and Dunivan induced her to forego a permanent employment with the Indiana Department of Correction[.]

92. Lockwood's reliance on the oral representations and assurances of Barber, Blackburn, and Dunivan induced her to believe she would be employed indefinitely by OCU.

93. The actions of Barber described herein constitute fraud in the inducement.

* * *

Count III Retaliatory Discharge

* * *

113. On or about August 27, 2017, in their respective capacities as VPA and VPAF, and at the direction of Blackburn, Jones and Lockwood advised members of the OCU Board of Trustees of observations, findings[,] and evidence of [the] following matters which fall within their duties and responsibilities as officers of OCU and custodians of the public fisc, in violation of I.C. § 22-5-3-3.

114. Jones and Lockwood, during the course of their employment[,] found evidence of misappropriation of endowment funds.

115. Jones and Lockwood, during the course of their employment[,] found evidence that CFO[ Beth Barber, wife of OCU President Barber,] failed to produce, or was incapable of producing, monthly financial reports.

116. Lockwood was denied complete access to OCU financial records but was required to take actions for which she could be personally liable.

117. Jones and Lockwood, during the course of their employment[,] found evidence that entity "Blue Oak, LLC" was created by Barber in collaboration with former VPAF [Yeager] for the purpose of controlling funds provided OCU by [the] United States Department of Agriculture and [the] Indiana Regional Cities Initiative associated with a capital project, commonly known as University Boulevard Commons.

118. Jones and Lockwood, during the course of their employment[,] . . . found evidence that the entity "Blue Oak, LLC" was created without the knowledge of the entire Board of Trustees.

121. Jones and Lockwood, during the course of their employment[,] . . . found evidence that Yeager was to be compensated from funds provided to OCU associated with a capital project, which constitutes misuse of public resources by the terms of the award.

122. Jones and Lockwood, during the course of their employment[,] . . . found evidence that funds in excess of $25,000 were designated in the proposed budget provided to the Southwest Indiana Regional Development Authority for payment to [a local law firm] for expenses associated with Blue Oak, LLC.

123. Jones and Lockwood were discharged in retaliation for their disclosure of the foregoing matters to members of the OCU Board of Trustees.

* * *

130. The wrongful/retaliatory discharge of Jones and Lockwood by Barber violates Indiana's public policy and I.C. § 22-5-3-3. . . .

Appellants' App. Vol. 2 at 27-39 (emphases and citations removed).

[4] In addition to those three counts, Jones and Lockwood alleged, as relevant here, two additional counts that were premised on a theory of at-will employment with OCU ("the at-will employment counts").[2] The at-will

---

[2] In their complaint, Jones and Lockwood additionally alleged that OCU and Barber had engaged in undue influence and that Jones' and Lockwood's purported at-will employment had been unlawfully terminated

employment counts specifically alleged that OCU and Barber had unlawfully terminated Jones' and Lockwood's at-will employment under a theory of "independent consideration," which was based on Jones' lost employment opportunity with Troy University and Lockwood's lost employment opportunity with the Department of Correction. The at-will employment counts also alleged unlawful termination of Jones' and Lockwood's employment under a theory of "promissory estoppel," which was based on their reliance on the oral representations of OCU's officers during their respective hiring processes. *Id.* at 39-41 (emphases removed). Jones and Lockwood attached their Employment Agreements and Termination Notices to their complaint.

[5] OCU and Barber jointly moved for judgment on the pleadings under Indiana Trial Rule 12(C). The court granted the motion and entered final judgment for OCU and Barber in light of the "clear and unambiguous" "language of the contract[s]," especially "the integration clause[s]." *Id.* at 21-22. This appeal ensued.

---

under a theory of constructive fraud. Jones and Lockwood also referred to the Employment Agreements as "unconscionable." Appellants' App. Vol. 2 at 30, 34. However, Jones and Lockwood do not argue on appeal that the trial court erred when it entered judgment on the pleadings with respect to those additional counts, and, thus, we do not consider the trial court's judgment with respect to those additional counts on appeal. *See* Ind. Appellate Rule 46(A)(8)(a).

# Discussion and Decision

## *Standard of Review*

Jones and Lockwood appeal the trial court's entry of judgment on the pleadings. As our Supreme Court has explained:

> A motion for judgment on the pleadings under Trial Rule 12(C) tests the sufficiency of a claim or defense presented in the pleadings and should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted. Because we base our ruling solely on the pleadings, we accept as true the material facts alleged in the complaint. When, as here, a 12(C) motion essentially argues the complaint fails to state a claim upon which relief can be granted, we treat it as a 12(B)(6) motion. Like a trial court's 12(B)(6) ruling, we review a 12(C) ruling *de novo*.

*KS&E Sports v. Runnels*, 72 N.E.3d 892, 898 (Ind. 2017) (quotations marks and citations omitted). For purposes of a Rule 12(C) motion, the pleadings, as relevant here, consist of the complaint and any written instrument attached to the complaint. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 840 (Ind. Ct. App. 2017), *trans. denied*.

As Jones and Lockwood's complaint alleges multiple and alternative theories of recovery, we address the counts as follows: the two counts of fraud in the inducement; the allegation of retaliatory discharge; and the two at-will employment counts.

## Issue One: Fraud in the Inducement Counts

[8] We first consider Jones and Lockwood's allegations that OCU and Barber fraudulently induced them into executing the Employment Agreements. The trial court entered judgment on the pleadings against Jones and Lockwood on these two counts based on the Integration Clauses of the Employment Agreements, in which Jones and Lockwood expressly disclaimed "all prior oral or written agreements, commitments or understandings" between the parties. Appellants' App. Vol. 2 at 73, 81-82.

[9] To plead a claim of fraud in the inducement, Jones and Lockwood needed to state (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of its falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment. *Siegal v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004). Such claims of actual fraud "may not be predicated upon representations of future conduct." *Id.* Neither may a claim of actual fraud be based on "broken promises, unfulfilled predictions, or statements of intent which are not executed." *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995), *trans. denied*.

[10] On appeal, OCU and Barber first assert that the pleadings fail to show that Jones and Lockwood's fraud in the inducement counts were based on past or existing facts. We initially note that OCU and Barber did not argue that theory in support of their motion for judgment on the pleadings to the trial court. *See* Appellees' App. Vol. 2 at 25-26, 45, 61, 98, 113-14. However, we nonetheless conclude that the issue is properly before us in that our standard of review on

Rule 12(C) issues is *de novo* and requires us to read the pleadings for ourselves to determine if they state any circumstances under which relief can be granted. *E.g.*, *KS&E Sports*, 72 N.E.3d at 898; *see also Celadon*, 70 N.E.3d at 840-41. In other words, we may affirm the trial court's judgment on a Rule 12(C) motion on any theory supported by the record, just as we can on appeal from a Rule 12(B)(6) judgment. *See Citizens Action Coalition of Ind. v. Koch*, 51 N.E.3d 236, 241 (Ind. 2016); *see also Celadon*, 70 N.E.3d at 841 (interpreting a new argument on appeal in support of the trial court's Rule 12(C) judgment as "merely [an] expression[] upon [the parties'] earlier arguments" to the trial court). Accordingly, we will consider OCU and Barber's contention that the pleadings fail to show a legally sufficient misrepresentation.

[11] We agree with OCU and Barber that, as a matter of Indiana law, Jones and Lockwood have failed to plead a misrepresentation of a past or existing fact. According to the complaint, the alleged misrepresentation underlying Jones' fraud in the inducement count occurred "during discussions" of employment terms when OCU's officers "orally represented to Jones that his employment would be contingent on his agreement to serve as VPA for a period of five years . . . ." Appellants' App. at 27-28. The complaint similarly alleges that the misrepresentation underlying Lockwood's fraud in the inducement count occurred "during the hiring process" when the parties were "in discussion with regard to employment by OCU," and Barber "orally assured Lockwood that her employment" with OCU "would be permanent." *Id.* at 32-33.

[12] "Indiana law has not recognized a claim for fraud based on misrepresentation of the speaker's current intentions." *Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 163 (Boehm, J., concurring in part and dissenting in part) (quoting *Sachs v. Blewett*, 206 Ind. 151, 155-56, 185 N.E. 856, 858 (1933); *Kopis v. Savage*, 498 N.E.2d 1266, 1272 (Ind. Ct. App. 1986)); *see also id.* at 161 n.6 (majority opinion) (agreeing with Justice Boehm that existing Indiana precedent does not permit an action for fraud based on a statement of current intention but noting that our precedent is in conflict with the Restatement (Second) of Contracts § 159 cmt. d (1981)).

[13] For example, in *Sachs*, a seller of real property alleged that putative buyers of that property had orally agreed to purchase the property for a specific price at an auction but had "intended to repudiate the agreement with the object of procuring the real estate at a lower price" after the auction. 185 N.E. at 858. Our Supreme Court stated that the buyers' "promises and representations were only false in the sense that the [buyers] intended to and did refuse to comply with them . . . ." *Id.* The court then held that such false intentions did not support a claim for fraud, stating that "[a] fraudulent intent alone is not actionable. . . . This court has repeatedly said that actionable fraud cannot be predicated upon a promise to do a thing in the future, although there may be no intention of fulfilling the promise." *Id.* The court further noted that "the law did not require" the parties "to carry out their agreement, and fraud cannot be predicated upon a failure to do that which there is no legal obligation to do." *Id.* at 859.

[14]     Similarly, in *Kopis*, the seller of a business "promised" a prospective buyer that he would "help arrange financing and to take the [business] off the market for 90 days." 498 N.E.2d at 1272. The seller failed to do so, and the prospective buyer was unable to finalize his purchase of the property because of the seller's failures. After a bench trial on the buyer's complaint, the trial court ultimately concluded that the buyer did not present sufficient evidence to show fraud on the part of the seller. We affirmed on appeal and held that the evidence showed that the seller's statements "were not misrepresentations of existing fact[] but [were] promises of future conduct for which an action of fraud will not lie." *Id.*

[15]     Jones and Lockwood's fraud in the inducement counts are premised on statements of current intentions by OCU's officers. Specifically, the alleged misrepresentations were with respect to the durations of employment OCU's officers had offered to Jones and Lockwood during their respective hiring processes and prior to the execution of their Employment Agreements. Assuming that those representations "were false in the sense that [OCU's officers] intended to and did refuse to comply with them," as in *Sachs* there is no factual basis for a fraud claim as "[a] fraudulent intent alone is not actionable." 185 N.E. at 858. Rather, as in *Kopis*, the representations of OCU's officers to Jones and Lockwood during their negotiations for employment "were not misrepresentations of existing fact[] but were promises of future conduct," that is, they were promises as to what the Employment Agreements would say when those agreements were eventually reduced to writing. 498 N.E.2d at 1272. That the Employment Agreements ended up saying something

different might go to the parties' meeting of the minds in the formation of a valid contract, but it does not go to a tort claim for fraud. *See Sachs*, 185 N.E. at 858.

[16] Indeed, the actual basis for the trial court's entry of judgment on the pleadings on the two fraud in the inducement counts was not that the pleadings failed to state a legally sufficient misrepresentation but that the parties' Integration Clauses precluded fraud.[3] That rationale was incorrect. As we have explained:

> The parol evidence rule provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 688 (Ind. 2005) (quoting 6 Arthur Linton Corbin, Corbin on Contracts § 573 (2002 reprint)) (emphasis removed). This rule "effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged in to or superseded by the written document." 11 Richard A. Lord, Williston on Contracts § 33:1 (4th ed. 1999) (footnote omitted).
>
> The first step when applying the parol evidence rule is determining whether the parties' written contract represents a complete or partial integration of their agreement. *See* Restatement (Second) of Contracts §§ 209, 210 (1981). If the contract is completely integrated, constituting a final and

---

[3] Jones and Lockwood's assertion on appeal that the Integration Clauses "do[] not extend to promises made thereafter" by OCU and Barber is not supported by cogent reasoning, and we do not consider it. Appellants' Br. at 24 (emphasis removed).

complete expression of all the parties' agreements, then evidence of prior or contemporaneous written or oral statements and negotiations cannot operate to either add to or contradict the written contract. *Franklin v. White*, 493 N.E.2d 161, 167 (Ind. 1986). *The preliminary question of integration, either complete or partial, requires the court to hear all relevant evidence, parol or written. Id.* "Whether a writing has been adopted as an integrated agreement is a question of fact to be determined in accordance with all relevant evidence." Restatement (Second) of Contracts §§ 209 cmt. c. Nevertheless, what is ordinarily a question of fact may become a question of law "where the facts are undisputed and only a single inference can be drawn from those facts." *Jones v. Ind. Bell Tel. Co.*, 864 N.E.2d 1125, 1127 (Ind. Ct. App. 2007) (breach of duty); *see also Hamilton v. Ashton*, 846 N.E.2d 309, 316 (Ind. Ct. App. 2006) (proximate cause), *clarified on reh'g*, 850 N.E.2d 466, *trans. denied*.

*Hinkel v. Sataria Distrib. & Packaging, Inc.*, 920 N.E.2d 766, 768-69 (Ind. Ct. App. 2010) (emphasis added; alteration and omissions original to *Hinkel*).

[17] In other words, whether a written contract represents the parties' complete and integrated agreement is a question of fact that may turn on parol evidence despite what the written contract itself may say. *Franklin*, 493 N.E.2d at 166-67. Moreover, "[p]arol evidence is admissible when fraud is at issue" and the purported written agreement is alleged to be void. *Peoples Trust & Sav. Bank v. Humphrey*, 451 N.E.2d 1104, 1112 (Ind. Ct. App. 1983). As the Indiana Supreme Court has long held, "[f]raud arising out of the negotiations leading up to the execution of a written contract is not merged therein . . . ." *Moore v. Harmon*, 142 Ind. 555, 41 N.E. 599, 600 (1895); *see also Franklin*, 493 N.E.2d at 166. Thus, the Integration Clauses did not preclude Jones and Lockwood from

introducing parol evidence to a fact finder on their claims that they were fraudulently induced to execute the Employment Agreements and, as such, that those agreements do not in fact represent the parties' intended agreements.

[18] In the trial court and on appeal, OCU and Barber substantially relied on this Court's opinion in *Circle Center Development Co. v. Y/G Indiana, L.P.* for the proposition that, to plead a claim of fraud in the inducement to a contract that contains an integration clause, the plaintiff must specifically assert that he was "fraudulently induced . . . to execute the disclaimer" itself. 762 N.E.2d 176, 180-81 (Ind. Ct. App. 2002), *trans. denied*. However, we have since clarified that, while such arguments "accurately quote[] our decision" in *Circle Center*, "the proposition upon which [our statement in *Circle Center* relied] has a broader application," namely, that a party "could overcome the effect of an integration clause if it could show it had a right to rely on the alleged misrepresentations and did in fact rely on them in executing *the release and/or the integration clause*." *Wind Wire, LLC v. Finney*, 977 N.E.2d 401, 405 (Ind. Ct. App. 2012) (quoting *Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 45 (Ind. Ct. App. 2009), *trans. denied*) (emphasis original to *Wind Wire*); *see also Judson Atkinson Candies, Inc. v. Kenray Assocs., Inc.*, 719 F.3d 635, 639-44 (7th Cir. 2013) (concluding that, insofar as *Circle Center* might be read to "announce a new categorical rule" of Indiana law, such rule "is inconsistent with the Indiana Supreme Court's pronouncements" and other decisions of our Court). We agree with those authorities and decline to follow *Circle Center* insofar as OCU

and Barber narrowly read it in a manner inconsistent with prevailing Indiana law.

[19] Nonetheless, regardless of the Integration Clauses, the pleadings demonstrate that Jones and Lockwood have not stated a claim for fraud because they have not identified a legally sufficient misrepresentation by OCU and its officers. Accordingly, on that basis we affirm the trial court's entry of judgment on the pleadings for OCU and Barber on the two fraud in the inducement counts.

### Issue Two:  Retaliatory Discharge

[20] We next consider Jones and Lockwood's claim that they were discharged in retaliation for reporting the misuse of public funds by OCU or its officers. According to their complaint, Jones and Lockwood's claim of retaliatory discharge is based on Indiana Code Section 22-5-3-3 (2018), which provides in relevant part as follows:

> (a)  An employee of a private employer that is under public contract may report *in writing* the existence of:
>
> * * *
>
>> (4) the misuse of public resources;
>
> concerning the execution of a public contract first to the private employer, unless the private employer is the person whom the employee believes is committing the . . . misuse of public resources.  In that case, the employee may report the . . . misuse of public resources *in writing* to either the private employer or to

any official or agency entitled to receive a report from the state ethics commission . . . .

(b) *For having made a report under subsection (a)*, an employee may not:

(1) be dismissed from employment . . . .

(Emphases added.)

[21] Assuming for the sake of argument that Indiana Code Section 22-5-3-3 creates a private cause of action, it is clear that, before the statute can apply, the employee's report must have been made "in writing." *Id.* There is no dispute that Jones and Lockwood did not make their report of misuse in writing.

[22] Instead, in the trial court Jones and Lockwood asserted that the statute's use of "may" means that they were not required to make a report in writing in order to be protected under the statute. We cannot agree. The statute's use of "may" means that an employee "may" report misuse but is not legally compelled to do so. However, if the employee chooses to make a report, he or she must do so "in writing" to be protected under the statute. As Jones and Lockwood did not make their report in writing, the trial court properly entered judgment on the pleadings for OCU and Barber on the retaliatory discharge count.

### Issue Three: At-Will Employment Counts

[23] Finally, we address Jones and Lockwood's at-will employment counts. In their complaint, Jones and Lockwood assert that, because the Termination Clauses

provide that they could be terminated for any reason on thirty days written notice, they were, despite appearances, at-will employees. They further allege that, as at-will employees, they were protected against dismissal without cause based on a theory of promissory estoppel and/or a theory of "independent consideration," namely, their forfeiture of job opportunities elsewhere to accept their employments with OCU. *See* Appellants' App. Vol. 2 at 39.

[24] Jones and Lockwood were clearly not at-will employees.[4] As the Indiana Supreme Court has made clear:

> Historically, Indiana has recognized two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment at-will. If there is an employment contract for a definite term, and the employer has not reserved the right to terminate the employment before the conclusion of the contract, the employer generally may not terminate the employment relationship before the end of the specified term except for cause or by mutual agreement. If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party.

*Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997) (footnote omitted).

---

[4] Jones and Lockwood's argument here is that they were at-will employees under the terms of their Employment Agreements. Insofar as Jones and Lockwood may have been able to claim at-will status by avoiding the Employment Agreements under a theory of fraud in the inducement, as explained in Issue One that theory is not available to them.

The Termination Clauses may have provided broad opportunities for OCU to end Jones' and Lockwood's employment, but the Employment Agreements unambiguously established a definite term for their employment with OCU. While the Employment Agreements were contracts for definite terms, the Termination Clauses also reserved OCU's right to terminate Jones' and Lockwood's employment before the end of those terms under the conditions provided in those clauses, a right which OCU exercised. *See id.* We agree with the trial court that the unambiguous language of the Employment Agreements precludes Jones and Lockwood's at-will employment counts, and we affirm the trial court's entry of judgment on the pleadings for OCU and Barber on those counts.

## Conclusion

We affirm the trial court's entry of judgment on the pleadings for OCU and Barber on all counts.[5]

Affirmed.

Pyle, J., and Altice, J., concur.

---

[5] Given our disposition, we need not consider Jones and Lockwood's additional arguments regarding discovery.