**TRU–CAL, INC., Appellant–Plaintiff,**

**v.**

**CONRAD KACSIK INSTRUMENT SYSTEMS, INC., Appellee– Defendant.**

**No. 29A04–0809–CV–511.**

Court of Appeals of Indiana.

April 29, 2009.

Transfer Denied July 23, 2009.

Jeffrey R. Gaither, Paul D. Vink, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellant.

William E. Wendling, Jr., Amy E. Higdon, Campbell Kyle Proffitt LLP, Carmel, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Tru–Cal, Inc. (Tru–Cal) appeals from the trial court's grant of summary judg-

ment in favor of Conrad Kacsik Instrument Systems, Inc. (CKI) on all of Tru–Cal's claims asserted in its complaint against CKI. On appeal, Tru–Cal presents the following restated issues for review:

1. Does the integration clause in the settlement agreement between Tru–Cal and CKI act to bar Tru–Cal from seeking rescission based upon fraudulent inducement?

2. Did the trial court err in granting summary judgment on Tru–Cal's Indiana Crime Victims Relief Act claim?

We reverse and remand.[1]

The facts viewed in a light most favorable to Tru–Cal, the non-moving party, follow. CKI employed Steven Sulzbach from April 1994 until his resignation in January 2005. Immediately following his employment with CKI, Sulzbach went to work for Tru–Cal, one of CKI's competitors. On February 1, 2005, CKI filed a complaint against Tru–Cal and Sulzbach in Cuyahoga County, Ohio. CKI listed the following counts in its complaint: I) Tortious interference with business relationships; II) misappropriation of trade secrets; III) unfair competition; IV) breach of employment agreement; V) breach of fiduciary duty; VI) procurement of breach of employment agreement; VII) unjust enrichment; and VIII) injunctive relief. The Ohio litigation was based in large part upon Sulzbach's violation of an employment agreement with CKI,[2] which he al-

1. By separate order, we deny Tru–Cal's request for oral argument, which was opposed by CKI.

2. The two-page agreement provided in relevant part:

   3. CONFIDENTIAL INFORMATION
   I acknowledge that I will receive ... at the Company's expense, all or part of the

following, and all of which is called "Confidential Information":
A) Training, materials and assistance from the Company's officers and employees;
B) Personal or mail contact with the Company's employees, agents, suppliers, customers and/or potential customers;
C) Trade secrets and other confidential information of the Company (including

legedly signed on May 5, 1994. The employment agreement was attached to CKI's complaint. Thereafter, on February 4, CKI represented under oath via the affidavit of its Chief Executive Officer, Christopher Miller, that Sulzbach signed the employment agreement on or about May 5, 1994. Miller went on to detail the alleged violations of said agreement committed immediately prior to and following Sulzbach's resignation in January 2005. Miller attached a copy of the employment agreement to his affidavit.

Upon learning of the Ohio litigation, Nathan Wright, the President of Tru–Cal, asked Sulzbach about the employment agreement, as Sulzbach had previously indicated that he did not have a non-compete agreement with his former employer. Sulzbach responded that the signature on the agreement appeared to be his but that he could not recall signing it. Wright attributed Sulzbach's inability to recall signing the employment agreement to the fact that more than ten years had passed since the agreement was executed.

In reliance on the fully executed employment agreement attached to CKI's complaint, as well as Miller's sworn affidavit testimony, Tru–Cal agreed to settle the Ohio litigation. On February 16, only two weeks after the Ohio litigation commenced, Tru–Cal executed a settlement agreement in which it agreed to pay CKI $25,000 in damages, restrict Sulzbach's employment on behalf of Tru–Cal, and return certain confidential information to CKI. Of particular relevance to the instant cause of action, the settlement agreement contained mutual releases and an integration clause:

> 6. *Mutual Release.* It is hereby agreed that the parties, and their suc-

> by not limited to its unique business methods, procedures, operating techniques, and "know how", instructional materials, and customer and supplier information) which have been developed by the Company through substantial expenditures of time, effort and money, and which are important and unique property of the company.
>
> I acknowledge that the foregoing confidential information is of such value and nature as to make it reasonable and necessary for the protection of the Company's business interests that I not compete with the company during my employment and for a reasonable and limited period thereafter and that I will not make known or use (other than in the regular course of my employment with the Company) during the term of this agreement or thereafter, any Confidential Information. Upon termination of my employment, I also agree that I will promptly return to the Company all copies of all materials and all equipment furnished to me by the Company.
>
> 4. EMPLOYEE OBLIGATIONS AND COVENANTS
>
>      \*    \*    \*
>
> B) During my employment by the company and for two (2) years following such employment, however terminated, I will not engage in any of the following activities directly or indirectly, individually, or as a partner, joint venture, employee, agent, salesman, consultant, of any person, firm, association or corporation:
>
> (1) enter into or engage in any business which competes with the Company's business; or
>
> (2) solicit customers, business, or orders ... for any business which competes with the Company's business;
>
> (3) promote or assist ... any corporation engaged in any business which competes with the company's business; or
>
>      \*    \*    \*
>
> C) During my employment and for two (2) years thereafter, I will communicate the contents of this Section 4 to any person, firm, association, or corporation, which I intend to be employed by ... which is engaged in a business which is competitive to the business of the Company.
>
> D) The parties hereto agree and declare that because of the irreparable nature of the injury that could result if I compete with the company or otherwise violate Section 4, damages are inadequate compensation. ...

*Appendix at 96.*

cessors and assigns, mutually release and forever discharge each other, and the successors and assigns of each, and their officers, directors, shareholders, and agents from any and every claim, cause of action, liability, demand, damages, contracts or controversies of whatever kind or nature, whether presently known or unknown, that pertain or arise pursuant to the subject matter of The Lawsuit regardless of whether asserted in The Lawsuit.

\* \* \* \* \* \*

13. *Entire Understanding.* The parties hereby acknowledge and represent, each to the other, that this Agreement constitutes a full, final, complete, and entire understanding of the agreement among them concerning the subject matter hereof; that this Agreement expressly supersedes and supplants paragraph 4 of Sulzbach's May 5, 1994 Employment Agreement with Conrad Kacsik; and before execution of this Agreement they have read it and have fully informed themselves of its contents, meaning, and legal effect, and have understood the same; that their execution of this Agreement is their own free act and deed and that the terms of the Agreement are contractual and not a mere recital. The undersigned respectfully warrant that no promise or inducement has been offered to them except as herein set forth; that this Agreement is executed without reliance upon any statement or representation by the parties released or their attorneys or representatives concerning the nature and extent of any claims and/or damages or legal liability therefore; that this Agreement evidences the resolution of all claims

disputed both as to the liability and to amount.

*Id.* at 109, 111.

Nearly a year after settlement of the Ohio litigation, Tru–Cal discovered information leading it to believe that CKI had forged Sulzbach's signature on the employment agreement. Specifically, beginning in December 2005 or January 2006, Wright had several discussions with Brenda McFadden, a former long-time employee and Vice President of CKI. McFadden informed Wright that no one at CKI to her knowledge had signed a non-compete agreement, including Sulzbach. During this same timeframe, Tru–Cal also spoke with other former CKI employees who all indicated they had not been asked to sign non-compete agreements. Wright subsequently retained a handwriting expert who opined that Sulzbach's signature on the employment agreement is a forgery.

After Tru–Cal discovered that Sulzbach's signature had been forged on the employment agreement,[3] it filed the instant action against CKI on August 7, 2006. Tru–Cal sought treble damages and attorney fees pursuant to the Indiana Crime Victims Relief Act, alleging that CKI had committed the crimes of conversion, forgery, deception, identity deception, and criminal mischief. In a separate count, Tru–Cal alleged that the Ohio litigation initiated by CKI constituted abuse of process. Finally, Tru–Cal alleged that CKI's conduct constituted fraud and, therefore, Tru–Cal was entitled to rescission of the settlement agreement, attorney fees, and punitive damages.

On June 13, 2008, CKI filed its motion for judgment on the pleadings or, in the alternative, motion for summary judgment,

**3.** While CKI disputes Tru–Cal's allegations regarding the authenticity of Sulzbach's signature on the employment agreement, CKI acknowledges that for purposes of summary judgment we must assume that the signature was forged.

along with a supporting memorandum and designated evidence. CKI argued that all of Tru–Cal's claims were barred by the settlement agreement which released all claims, whether known or unknown, relating to the subject matter of the Ohio litigation. In the alternative, CKI sought dismissal of the claim under the Indiana Crime Victims Relief Act because all of CKI's actions occurred outside of Indiana. Thereafter, Tru–Cal filed its response in opposition to CKI's motion, arguing, among other things, that the terms of the fraudulently induced settlement agreement cannot serve to bar a claim for rescission. Following a hearing, the trial court granted summary judgment in favor of CKI on August 12, 2008. Tru–Cal now appeals.

When reviewing a trial court's grant or denial of summary judgment, we apply the same standard as the trial court. *Herron v. Anigbo*, 897 N.E.2d 444 (Ind.2008). "Therefore, summary judgment is to be affirmed only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* at 448. Further, all facts established by the designated evidence, and all reasonable inferences therefrom, are to be construed in favor of the non-

moving party. *Herron v. Anigbo*, 897 N.E.2d 444.

### 1.

■ Tru–Cal argues that the trial court's summary judgment order "embraces the untenable and unjust proposition that the release and integration terms of a fraudulently induced settlement agreement provide a shield against a subsequent claim for rescission." [4] *Appellant's Brief* at 6. Tru–Cal asserts that such a result is especially unjust where the integration clause is boilerplate and the alleged misrepresentation was not specifically disclaimed. CKI responds that Tru–Cal is bound by the language of the settlement agreement because it contained an integration clause and because, as a sophisticated party represented by counsel in the negotiation and settlement process, Tru–Cal should have investigated the validity of the employment agreement prior to executing the settlement agreement.[5]

■ The general principle that fraud in the inducement[6] vitiates a contract applies to releases. *Prall v. Indiana Nat'l Bank*, 627 N.E.2d 1374 (Ind.Ct.App.1994). The elements of fraud are "(1) a material

---

**4.** The trial court's order was a general grant of summary judgment on all claims. Tru–Cal correctly observes, however, that the central tenet of CKI's motion for summary judgment was that two provisions in the settlement agreement—a mutual release waiving all claims and an integration clause—preclude Tru–Cal from asserting any claims against CKI in this case.

**5.** CKI also asserts that it alleged at least one count in the Ohio litigation that did not rely on the employment agreement. Thus, CKI contends it was entitled to summary judgment regardless of whether the employment agreement was forged and reasonably relied upon by Tru–Cal in executing the settlement agreement because "there was a basis *other than the employment agreement* for the entry of the settlement agreement" and, therefore, the set-

tlement cannot be set aside. *Appellee's Brief* at 12 (emphasis in original). Frankly, we do not follow CKI's argument. Moreover, as it is not supported by citation to authority, we find the argument waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring arguments to be supported by cogent reasoning and citation to relevant authority).

**6.** Fraudulent inducement occurs when a party is induced through fraudulent misrepresentation to enter into a contract. *Lightning Litho, Inc. v. Danka Indus.*, 776 N.E.2d 1238 (Ind.Ct.App.2002), *trans. denied.* A party claiming fraudulent inducement must generally elect between two remedies: 1) rescission of the contract or 2) damages. In the instant action, Tru–Cal seeks to rescind the settlement agreement.

representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party." *Bilimoria Computer Sys., LLC v. America Online, Inc.,* 829 N.E.2d 150, 155 (Ind.Ct. App.2005).

For purposes of summary judgment, we will assume that the employment agreement was forged. The essence of the dispute between the parties appears to center on whether Tru–Cal rightfully or reasonably relied upon CKI's false representations (i.e., the forged employment agreement, as well as the pleadings in the Ohio litigation and Miller's affidavit). CKI contends that, as a matter of law, Tru–Cal could not reasonably rely upon these false representations because of the integration clause in the settlement agreement, which disclaimed reliance on any outside statement or representation.

In support of its argument, CKI directs us to *Prall v. Indiana Nat'l Bank,* 627 N.E.2d 1374 and *Circle Ctr. Dev. Co. v. Y/G Ind., L.P.,* 762 N.E.2d 176 (Ind.Ct. App.2002), *trans. denied.* cases in which we concluded as a matter of law that the fraudulent inducement claim in each case was barred by the contract's integration clause. Both cases are factually distinguishable from the instant case, as they dealt with alleged oral misrepresentations made prior to the execution of the contract. In *Circle Ctr. Dev. Co.,* we stated:

> The exception for a party who "has been induced by a fraudulent misrepresentation to enter the contract," must not be stretched or inflated in a way that "would severely undermine the policy of

the parol evidence rule, which is grounded in the inherent reliability of a writing as opposed to the memories of contracting parties."

*Circle Ctr. Dev. Co. v. Y/G Ind., L.P.,* 762 N.E.2d at 180(quoting *Urschel Farms, Inc. v. Dekalb Swine Breeders, Inc.,* 858 F.Supp. 831, 840 (N.D.Ind.1994) (citations omitted)). In the instant case, however, we are not left to rely on the memories of the contracting parties. Rather, the alleged fraud here involves a forged employment agreement that was filed in a court of law, along with a complaint and an affidavit that represented to the Ohio court that said agreement was valid.[7] Assuming, as we must, that the employment agreement was forged, the Ohio litigation initiated by CKI was therefore a sham.

In both *Prall* and *Circle Ctr. Dev. Co.* we acknowledged that a party could overcome the effect of an integration clause if it could show it had a right to rely on the alleged misrepresentations and did in fact rely on them in executing the release and/or integration clause. *Prall v. Indiana Nat'l Bank,* 627 N.E.2d 1374; *Circle Ctr. Dev. Co. v. Y/G Ind., L.P.,* 762 N.E.2d 176. *See also America's Directories Inc. v. Stellhorn One Hour Photo, Inc.,* 833 N.E.2d 1059 (Ind.Ct.App.2005) (rejecting per se rule that inclusion of an integration clause in a contract precludes any prior representations from being used to prove fraud in the inducement), *trans. denied.* In other words, in *Prall,* we explained, "the fraud must have induced or produced the execution of the release or contributed to it as a cause. Additionally, it must appear the representation was made with the intent that it should be acted on by the releaser in the execution of the release." *Prall v. Indiana Nat'l*

---

7. The forged document was even referenced within the four corners of the settlement agreement. Thus, the fraudulent representations were not entirely extraneous to the written contract, unlike the typical fraudulent inducement claim.

*Bank*, 627 N.E.2d at 1379. Further, we indicated that "[w]hether one has the right to rely depends largely on the facts of the case." *Id.*

Here, there can be no doubt that the fraud directly induced the execution of the settlement agreement or, at least, contributed to it as a cause. Nor can there be any doubt that the false representations were made to Tru–Cal and the Ohio court with the intent that they should be acted upon by Tru–Cal. Finally, Tru–Cal has presented a material issue of fact as to whether it had the right to rely on the employment agreement and the other related representations made in the Ohio litigation.[8] The designated evidence indicates that Wright, the President of Tru–Cal, believed the employment agreement was valid (i.e. not forged) at the time he executed the settlement agreement. Under the circumstances, we do not find this assumption unreasonable as a matter of law, nor do we question Tru–Cal's decision to swiftly settle the Ohio litigation in light of Sulzbach's apparent violation of said agreement. Moreover, unlike the plaintiff in *Prall*, we observe that Tru–Cal did not plainly have the means at hand to unearth the fraud before executing the release. Further, the boilerplate integration clause did not expressly indicate that Tru–Cal had independently investigated the validity of the signature on the employment agreement. *Cf. Circle Ctr. Dev. Co. v. Y/G Ind., L.P.*, 762 N.E.2d 176.

This is the type of case described in *Prall* and *Circle Ctr. Dev. Co.* where a party can overcome the effect of an integration clause and bring a fraud in the inducement claim to rescind the contract. Questions of fact remain regarding, among other things, whether Tru–Cal reasonably relied upon the alleged false representations made by CKI in the Ohio litigation. The trial court erred in granting summary judgment on this basis.

2.

█ The parties briefly address an additional issue with respect to Tru–Cal's Indiana Crime Victims Relief Act (the Act) claim.[9] CKI argued to the trial court that the criminal acts alleged by Tru–Cal (conversion, forgery, deception, identity deception, and criminal mischief) all occurred in

---

**8.** In *Prall*, we noted that Prall had presented no evidence or argument to show INB's alleged oral misrepresentations about certain disbursements (of which he was unaware) induced him to sign the release or contributed to its cause. He also failed to present any evidence indicating that the misrepresentations were made with the intent to induce his execution of the release. Moreover, Prall was a sophisticated party, represented by counsel, dealing at arms length with INB. He had no right to rely on the oral representations of an adverse party, especially where he represented in the integration clause that he had investigated the information concerning the disbursements and where Prall (as a general partner in the organization directing the disbursements) had both "practical and legal access" to such information at the time he signed the release. *Id.* at 1379.

Similarly, in *Circle Ctr. Dev. Co.*, we held that Y/G could not, as a matter of law, claim fraud in the inducement. Y/G had expressly acknowledged in the lease that it had performed an independent investigation of the potential for success of its operations at Circle Centre and was not relying on any inducements or representations by Circle Centre other than those contained in the lease. Given the specific disclaimer, "and without any allegation that the disclaimer itself was procured by fraud," we held that "Y/G has failed to demonstrate on the face of the pleadings that it had a right to rely on Circle Centre's alleged misrepresentations." *Circle Ctr. Dev. Co. v. Y/G Ind., L.P.*, 762 N.E.2d at 181.

**9.** Ind.Code Ann. § 34–24–3–1 (West, PREMISE through 2008 2nd Regular Sess.) provides for treble damages if a person suffers a pecuniary loss as the result of a violation of certain enumerated criminal code sections.

Ohio, not Indiana, and, therefore, Tru–Cal failed to state a claim under the Act.

In *Yoder Grain, Inc. v. Antalis,* 722 N.E.2d 840 (Ind.Ct.App.2000), *abrogated on other grounds by Keesling v. Beegle,* 880 N.E.2d 1202 (Ind.2008), we observed that criminal acts committed entirely outside Indiana cannot support a claim under the Act because the defendant's actions do not violate Indiana law. Further, Ind. Code Ann. § 35–41–1–1 (West, PREMISE through 2008 2nd Regular Sess.) provides in relevant part:

(b) A person may be convicted under Indiana law of an offense if:

(1) either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana;

* * * * * *

Relying on this statute, we held in *Brehm v. State,* 558 N.E.2d 906 (Ind.Ct.App.1990), that the defendant could be convicted of intimidation and harassment despite the fact that all of his telephone calls to Indiana were placed in Michigan. We reasoned, "the result occurred in Indiana" when the intimidating and harassing messages were recorded and received in Indiana. *Id.* at 908.

Here, the parties do not, and therefore we will not, delve into the specific elements of each of the criminal provisions allegedly violated by CKI. While at first blush many of the criminal allegations appear to lack teeth, that is not the issue before us. It is sufficient for our purposes at this stage of the proceedings to conclude that there exists a question of fact as to whether the conduct and/or the result of any of the alleged offenses occurred in Indiana. Specifically, we note that the designated evidence reveals CKI served Tru–Cal in Indiana with the forged employment agreement attached to its complaint, thus, initiating the Ohio litigation. *See* Ind.Code Ann. § 35–43–5–2(b) (West, PREMISE through 2008 2nd Regular Sess.) (forgery includes the making, *uttering,* or possession of a written instrument, with intent to defraud, in such a manner that it purports to have been made by another person). CKI is not entitled to summary judgment with respect to Tru–Cal's Indiana Crime Victims Relief Act claim on this alternative ground argued by CKI.

Judgment reversed and remanded.

MAY, J., and BRADFORD, J., concur.