# FOR PUBLICATION



FILED
Oct 17 2012, 8:46 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JONATHAN A. WATSON**
Wandling & Associates
South Bend, Indiana

ATTORNEYS FOR APPELLEES:

**JAMIE C. WOODS**
**PHILLIP A. GARRETT**
Thorne • Grodnik, LLP
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WIND WIRE, LLC, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1202-PL-78 |
| | ) | |
| ROGER FINNEY and | ) | |
| PATRICIA FINNEY, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

**APPEAL FROM THE ST. JOSEPH SUPERIOR COURT**
The Honorable Jenny Pitts Manier, Judge
Cause No. 71D05-1008-PL-151

**October 17, 2012**

**OPINION  - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Wind Wire LLC appeals the trial court's judgment that it fraudulently induced Appellees-Plaintiffs Roger and Patricia Finney to execute a contract for the purchase and installation of a residential wind turbine and that it breached that contract's implied warranty of fitness for a particular purpose. We affirm.

## FACTS AND PROCEDURAL HISTORY

The trial court based its judgment on these specific findings of fact. At some point prior to May 14, 2008, the Finneys received a copy of a Wind Wire advertising brochure that had been left in their mailbox by a Wind Wire representative. The brochure described the cost savings to be realized through the use of energy producing wind turbines and included the following representations:

> WIND-WIRE provides the average household the means to harness the wind at a feasible cost for a savings of approximately 75% to 100% of current electric service.

> With a savings of approximately $160 plus per month and a payoff span of 3-4 years you would control 75% to 100% of your electric supply utilizing nature and doing your small part for the ecology? (sic)

> If you could invest in a system that would not only increase the value of your property but could generate an average of 700K wh [sic] per hour could you do it?

> WIND-WIRE will show how the homeowner can receive a substantial refund on their (sic) taxes for the installation of the system, saving the homeowner even more money.

Appellant's App. p. 4

Wind Wire produced the brochure as an advertising tool to induce people to contract with Wind Wire for the purchase and installation of wind turbines, and it conceded at trial that a reasonable person would rely on the information contained in the

2

brochure. Intrigued by the brochure's representations, the Finneys contacted Wind Wire and later met with Wind Wire representatives to discuss the installation of a wind turbine on the Finneys' property.

While meeting with Wind Wire, Mr. Finney declared that the Finneys wanted to install a turbine to save money on their electric bill. In response to Mr. Finney's statement, Wind Wire representative Glen Smith affirmed the cost savings representations contained in Wind Wire's brochure. At trial, however, Wind Wire could not recall the name or location of the customer alleged in the brochure to have generated an average of 700 kWh through the use of its wind turbine. Moreover, at the time Wind Wire placed the brochure in the Finneys' mailbox, it did not know the average wind speed in the town where the Finneys' property is located.

Smith also told the Finneys that Wind Wire was highly qualified, had been in the wind turbine business for awhile, and had installed two turbines at a bank in Mishawaka. Based on these representations, the Finneys believed Wind Wire's representatives to be qualified and knowledgeable. However, the extent of Smith's formal training was a one-hour "webinar"; he had no experience with wind turbines prior to undertaking the business of selling and installing them.

Wind Wire also told the Finneys that the company supplying their electric service, AEP, would purchase the excess energy produced by their wind turbine. As intended by Wind Wire, Mr. Finney understood this to mean that AEP would issue him a check for those periods in which his energy production exceeded his energy consumption. AEP, however, does not issue checks to its customers for this reason. Moreover, Wind Wire

failed to inform the Finneys that, in order to measure the production of excess energy, their wind turbine would require a type of electrical meter other than the typical residential meter with which their wind turbine was equipped.

Wind Wire's representatives further told the Finneys that installation of a wind turbine would entitle them to a tax credit, the amount of which was described in terms of a percentage of the purchase price. In fact, the credit was fixed at $900.00 for the Finneys. Wind Wire created the impression that the amount of the Finneys' tax credit would be greater.

On May 14, 2008, in reliance on the representations contained in the brochure and the statements made by Wind Wire representatives during their meeting with the Finneys, the Finneys executed a contract with Wind Wire for the purchase and installation of a wind turbine. The wind turbine was not erected on the Finneys' property until October 2008, and it did not begin producing electrical power until September 2009. Since that time, the Finneys' wind turbine has produced no excess power and has had no effect on their electric bills. The wind turbine actually consumes energy while it sits idle. Based on the cost of electricity from AEP, it would not be possible for the Finneys' wind turbine to pay for itself in three to four years. AEP represents that it typically takes twenty-five years for a wind turbine to pay for itself. Moreover, in the approximately one year since its installation on the Finneys' property, the wind turbine has produced a total of only 134.2 kWh. According to AEP, even if the wind turbine were running continuously at maximum capacity, it would create only 1100-1200 kWh and produce, at most, a utility savings of $155 per month.

4

In July 2010 a Wind Wire representative met with representatives of Southwest Wind Power ("SWP"), the manufacturer of the wind turbines Wind Wire installs, to address problems with such installations. SWP had received customer complaints directed at Wind Wire and was concerned about customer expectations of energy production associated with Wind Wire's installation of SWP wind turbines. SWP questioned Wind Wire about its customers' experiences, specifically inquiring as to how Wind Wire arrived at the energy production data it was advertising. SWP was especially concerned about Wind Wire's marketing materials and its ability to service its customers adequately. Ultimately, SWP placed Wind Wire on a sixty-day suspension and admonished Wind Wire not to "share extraordinary production levels of previous customers with potential customers during the sales process." Appellant's App. p. 4. SWP further placed Wind Wire on six months probation due to concerns with Wind Wire's marketing materials and customer satisfaction.

On August 9, 2010, the Finneys filed a complaint in St. Joseph Superior Court, alleging, among other things, breach of contract, breach of implied warranty of fitness for a particular purpose, and fraud. Relevant to these claims, the Finneys' contract with Wind Wire contained the following integration clause:

> It is understood that this Agreement and any documents which are attached hereto or referenced herein constitute the intire [sic] agreement between the parties and all other agreements, represenstion [sic], promises, inducements, statements, and understandings, prior to and contemporaneous with this Agreement, written or oral, are suspended by this Agreement.

Appellant's App. p. 17.  The contract also included the following paragraph regarding warranties:

> **IF PURCHASER MAKES ALL PAYMENTS WHEN DUE, SELLER AND THE MANUFACTURER OF CERTAIN OF THE MATERIAL BEING SUPPLIED BY SELLER WILL PROVIDE PURCHASER WITH SPECIFICATE [sic] WARRANTIES.  SELLER MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESEPCT TO THE GOODS COVERED BY THIS CONTRACT….**

Appellant's App. p. 18.  On January 17, 2012, after a bench trial, the trial court entered judgment in favor of the Finneys.  Specifically, the trial court concluded:

> Wind Wire has breached [the contract] by failing to provide [the Finneys] the warranties referenced in paragraph 15.[1]
>
> [Wind Wire] has breached the implied warranty that the turbine at issue was fit for the particular purpose for which [the Finneys] purchased it.
>
> [Wind Wire] fraudulently induced [the Finneys] to execute the contract by knowingly and falsely misrepresenting its experience and expertise, knowingly and falsely misrepresenting the cost savings [the Finneys] would enjoy as a result of the installation of the wind turbine at issue, and by having made such representations, fully aware of their falsity, for the purpose of inducing [the Finneys] to contract with Wind Wire for the purchase and installation of a wind turbine.

Appellant's App. p. 9.  The trial court determined that the Finneys suffered damages "at least in the amount of $14,500.00" and that they "are entitled to treble damages due to [Wind Wire's] fraudulent conduct." Appellant's App. p. 9.  The court also awarded the Finneys reasonable attorneys fees, for a total judgment of "$54,893.00 plus the costs of this action." Appellant's App. p. 9.

---

[1] The warranties are actually referenced in paragraph 16.

## DISCUSSION AND DECISION

### I. Integration Clause and Disclaimer

Wind Wire argues that the trial court erred in finding fraud in the inducement. The elements of fraud are "(1) a material representation of […] facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party." *Tru–Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 44-45 (Ind. Ct. App. 2009). Wind Wire claims the Finneys are precluded from satisfying the fifth element—justifiable reliance—because its contract with the Finneys contained an integration clause that disclaimed reliance on any prior representations. We restate this issue as whether the trial court committed clear error by applying the wrong legal standard.

> In the appellate review of claims tried without a jury, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses. A judgment will be clearly erroneous when there is "no evidence supporting the findings or the findings fail to support the judgment," and when the trial court applies the wrong legal standard to properly found facts. While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo.

*Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005) (internal citations omitted).

"An integration clause of a contract is to be considered as any other contract provision to determine the intention of the parties and to determine if that which they intended to contract is fully expressed in the four corners of the writing." *Prall v. Ind. Nat'l Bank*, 627 N.E.2d 1374, 1377-78 (Ind. Ct. App. 1994) (citing *Franklin v. White* 493

7

N.E.2d 161, 166 (Ind. 1986)). "Generally, where parties have reduced an agreement to writing and have stated in an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Id.* (citing *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1035 (Ind. Ct. App. 1998)). "An exception to the parol evidence rule applies, however, in the case of fraud in the inducement, where a party was 'induced' through fraudulent representations to enter a contract." *Circle Ctr. Dev. Co. v. Y/G Ind., L.P*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002).

Wind Wire contends the fraudulent inducement exception to the parol evidence rule only applies if the alleged misrepresentation specifically "'induced or produced the execution of the … disclaimer,'" as opposed to the signing of the contract generally. Appellant's Br. p. 9 (quoting *Circle Ctr. Dev. Co.*, 762 N.E.2d at 180). Although Wind Wire accurately quotes our decision in *Circle Ctr. Dev. Co.*, the proposition upon which it relies has a broader application. "In both *Prall* and *Circle Ctr. Dev. Co.* we acknowledged that a party could overcome the effect of an integration clause if it could show it had a right to rely on the alleged misrepresentations and did in fact rely on them in executing *the release and/or integration clause*."[2] *Tru-Cal, Inc.*, 905 N.E.2d at 45 (emphasis added) (citing *Prall*, 627 N.E.2d 1374; *Circle Ctr. Dev. Co.*, 762 N.E.2d 176). Moreover, our decision in *Circle Ctr. Dev. Co.* did not overrule the requirement that the weight given to a contract's integration clause be decided on a case-by-case basis. *See id.*

---

[2] "A release is a species of contract…." *Prall*, 627 N.E.2d at 1377.

8

at 46 (quoting *Prall*, 627 N.E.2d at 1379) ("'Whether one has the right to rely depends largely on the facts of the case.'").

We conclude that the trial court did not apply the wrong legal standard and, therefore, that its judgment is not clearly erroneous. We note that Wind Wire makes no claim in its Appellant's Brief that the evidence does not support the trial court's findings of fact or that these findings fail to support the court's conclusions of law. The trial court's judgment on this issue is affirmed.

## II. Warranty of Fitness for a Particular Purpose

Having affirmed the trial court's judgment on fraud in the inducement, we need not reach Wind Wire's second argument that the court erred in finding breach of the implied warranty of fitness for a particular purpose. As Wind Wire correctly highlights in its reply brief, "the breach of warranty did not form the basis of [the trial court's] decision" or the resulting calculation of damages. Reply Br. p. 7. "Rather, the decision was based entirely on the finding of fraud." Reply Br. p. 7. Any error pertaining to this issue is, therefore, harmless.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.