In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 12-1035 & 12-1036

JUDSON ATKINSON CANDIES, INCORPORATED,

*Plaintiff-Appellant,*

*v.*

KENRAY ASSOCIATES, INCORPORATED,
CHARLES A. MCGEE AND KENNETH J. MCGEE,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Southern District of Indiana, New Albany Division.
Nos. 02 CV 00242, 03 CV 00012—
**William G. Hussmann, Jr.**, *Magistrate Judge.*

ARGUED JANUARY 17, 2013—DECIDED JUNE 11, 2013

Before MANION and TINDER, *Circuit Judges*, and LEE, *District Judge.**

LEE, *District Judge.* In settling two lawsuits, Judson Atkinson Candies, Inc., and Kenray Associates, Inc.,

---

* Honorable John Z. Lee, of the Northern District of Illinois, is sitting by designation.

entered into an agreement, which required Kenray to pursue its insurer for coverage of Atkinson's claims. But when Kenray's attempts failed, Atkinson sought to invalidate the agreement, alleging that it had been fraudulently induced to enter into it. Because the agreement contained an integration clause, the district court, applying Indiana law, established a bright-line rule, requiring Atkinson to demonstrate that it had been induced by fraud to enter into the integration clause itself, as opposed to the agreement as a whole, in order to circumvent the parol evidence rule. Because Indiana law does not impose such a bright-line rule, we reverse.

## I. Background

Judson Atkinson Candies, Inc., and Atkinson Candy Company (collectively "Atkinson") filed two separate lawsuits in the United States District Court for the Eastern District of Texas against Kenray Associates, Inc., Charles A. McGee, and Kenneth J. McGee (collectively "Kenray"), alleging that Kenray had failed to satisfy certain technology agreements and representations made therein. The cases were subsequently transferred to the United States District Court for the Southern District of Indiana and consolidated for the purposes of trial. For its part, Kenray also initiated a separate action against its insurance carrier, Hoosier Insurance Company, in the Superior Court for Floyd County, Indiana, seeking insurance coverage for Atkinson's claims.

In December 2004, during the pendency of the trial in their consolidated cases, Atkinson and Kenray settled

the lawsuits against one another. As part of the settlement, Kenray agreed to the entry of judgments against it and in favor of Atkinson. At the same time, the parties entered into a "Covenant Not To Execute," whereby Atkinson agreed not to execute on the judgments if Kenray pursued the coverage action against Hoosier and otherwise complied with the terms of the Covenant, even if the Indiana courts eventually found in Hoosier's favor. Kenray also agreed to assign to Atkinson any claims it may have had against its insurance agent. Notably for present purposes, the Covenant contained the following language: "The parties agree this agreement represents the parties' sole agreement."

In Kenray's lawsuit against Hoosier, the Floyd County Superior Court found that no insurance coverage existed for Atkinson's claims and entered judgment in favor of Hoosier in January 2007. On October 3, 2007, the Indiana Court of Appeals upheld the decision, and the Indiana Supreme Court denied transfer on January 17, 2008, effectively ending the coverage litigation. *See Kenray Assocs., Inc. v. Hoosier Ins. Co.*, 874 N.E.2d 406 (Ind. Ct. App. 2007); *Kenray Assocs., Inc. v. Hoosier Ins. Co.*, 891 N.E.2d 36 (Ind. 2008). Meanwhile, in June 2007, Atkinson filed a lawsuit against Kenray's insurance agent asserting Kenray's errors and omissions claims. In March 2010, the insurance agent prevailed on summary judgment.

On January 14, 2011, foreclosed from recovering any funds from Hoosier and Kenray's insurance agent, Atkinson went back to the district court that presided

over the original lawsuits between itself and Kenray and filed a motion to set aside the Covenant. Atkinson argued that it was fraudulently induced to enter into the Covenant and only did so based upon representations from Kenray that its insurance agent had confirmed that Kenray had insurance coverage for Atkinson's claims. Atkinson further argued that Kenray's representations were made with the knowledge that, in fact, the insurance agent had advised Kenray that Hoosier would likely deny the claim, and that Kenray intentionally withheld this information from Atkinson.

In response, Kenray argued that because the Covenant contained an integration clause that precluded Atkinson's reliance upon any oral representations made by Kenray prior to its execution, Atkinson's fraudulent inducement claim failed.

On June 29, 2011, the Magistrate Judge, to whose jurisdiction the parties consented, indicated that he would likely deny Atkinson's motion to set aside the Covenant and took it under advisement. In its order, the court held that because the Covenant contained an unambiguous integration clause, parol evidence could not be considered to vary the terms of the agreement. However, the court also held that if Atkinson could demonstrate that there was fraud in the inducement *specific to the integration clause*, rather than as to the agreement as a whole, then Atkinson might still be able to circumvent the parol evidence rule and prevail on its claim. Because the parties had not addressed this particular issue in their briefs, the court scheduled an evidentiary hearing

as to this limited point, concluding, "absent a showing by Atkinson that there was fraud in the inducement of the clause itself, the integration clause will prohibit the court from doing anything other than enforcing the [C]ovenant as written."

Confronted with the court's order, Atkinson moved to cancel the evidentiary hearing. Although it remained steadfast that it had been fraudulently induced to enter into the Covenant as a whole, Atkinson conceded that it could not establish fraudulent inducement as to the integration clause itself. On December 13, 2011, the court denied Atkinson's motion to set aside the Covenant "because Plaintiff is unable to show that there was fraud in the inducement of the [integration] clause itself" and confirmed its June 29, 2011, order as the final order. Atkinson timely appealed.

## II. Discussion

On appeal, Atkinson argues that the district court misapplied Indiana law when it required Atkinson to provide evidence of fraudulent inducement in connection with the execution of the integration clause itself, rather than as to the Covenant as a whole, in order to overcome the parol evidence rule. Not surprisingly, Kenray responds that the district court properly applied the law in denying Atkinson's motion.

As a preliminary matter, the parties agree that this Court's review of the district court's denial of Atkinson's motion is conducted *de novo*, because the district court

treated the motion as one for summary judgment. *Ziliak v. Astra Zeneca, L.P.*, 324 F.3d 518, 520 (7th Cir. 2003). The parties further agree that Indiana state law governs this dispute, and the Court concurs. *See Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (where "case arises from the diversity jurisdiction of a federal court sitting in Indiana," principles of Indiana law apply). Accordingly, it is to Indiana law that we turn.

### A.  Integration Clauses and the Parol Evidence Rule

We start with the general principle of Indiana law that "where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties . . . the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Krieg v. Hieber*, 802 N.E.2d 938, 943 (Ind. Ct. App. 2004). When examining the impact of an integration clause, the court is to consider the integration clause "as any other contract provision to determine the intention of the parties and to determine if that which they intended to contract to is fully expressed in the four corners of the writing." *Franklin v. White*, 493 N.E.2d 161, 166 (Ind. 1986).

Because an integration clause "is only some evidence of the parties' intentions," the court "should consider an integration clause along with all other relevant evidence on the question of integration." *Id*. As such, the mere

inclusion of an integration clause "does not control the question of whether a writing is or was intended to be a completely integrated agreement." *America's Directories Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1067 (Ind. Ct. App. 2005). In the end, "the weight to be accorded an integration clause will vary, depending on the facts and circumstances of each particular case." *Franklin*, 493 N.E.2d at 166. And the court is "to hear all relevant evidence, parol or written" in making this determination. *Id.* at 167.

### B. The Fraudulent Inducement Exception to the Parol Evidence Rule

Another long-established principle of Indiana law provides that the parol evidence rule will not apply "in the case of fraud in the inducement, where a party was 'induced' through fraudulent representations to enter a contract." *Circle Centre Dev. Co. v. Y/G Ind., L.P.*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002) (citing *Ruff v. Charter Behavioral Health Sys. of Nw. Ind.*, 699 N.E.2d 1171, 1174 (Ind. Ct. App. 1994)); *see Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002) ("Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract.").[1] The "general principle" is that

---

[1] To prove fraudulent inducement, Atkinson must demonstrate that Kenray made a false material representation of fact; that it was made with knowledge or reckless disregard of its

(continued...)

"fraud vitiates all contracts." *Prall v. Ind. Nat'l Bank*, 627 N.E.2d 1374, 1378 (Ind. Ct. App. 1994).

The question before us then lies at the intersection of these two legal principles. To wit, where a party to a contract alleges fraudulent inducement and the contract in question has a valid integration clause, must the party demonstrate that it was fraudulently induced to agree to the integration clause itself before it can rely upon prior representations to vitiate the contract, or is it sufficient for a party to show that it was fraudulently induced to enter into the contract as a whole? Relying upon *Circle Centre,* 762 N.E.2d 176, the district court found that, before Atkinson could invoke any parol evidence, it had to show that it had been fraudulently induced to agree to the integration clause itself. Because we believe that this is too narrow a reading of Indiana law, we reverse.

## C.  *Prall, Circle Centre*, and Their Progeny

In beginning our analysis, we note that the Indiana Supreme Court has not yet spoken on this particular issue. "Where the state supreme court has not ruled on an issue, decisions of the state Court of Appeals

---

[1] (...continued)

falsity with an intent to deceive; and that Atkinson reasonably relied upon the misrepresentation, which was the proximate cause of its injury. *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005).

control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) (citing *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997)). Therefore, we are left to parse the recent Indiana Court of Appeals decisions that touch upon this issue. Before considering the holding in *Circle Centre*, however, we begin with the case upon which that court relied: *Prall v. Indiana National Bank*.

Fred Prall had sued The Indiana National Bank ("INB") for breach of contract, and INB had counterclaimed for default of a loan agreement. The parties eventually settled the lawsuit and entered into a mutual release agreement, in which Prall agreed to release all claims, known or unknown, against INB in connection with the project from which the dispute arose. *Prall*, 627 N.E.2d at 1376. The release agreement expressly stated that "this document contains the entire agreement between the parties hereto and no representation or promises, other than those contained or referred herein, have been made by any party to any other party to secure the execution of" the release. *Id.* at 1377. In an effort to circumvent the release, Prall argued, *inter alia,* that INB had fraudulently induced him to enter into the release agreement by making certain misrepresentations prior to the agreement's execution. *Id.* at 1378.

The Indiana Court of Appeals recognized first the general principle that an integration clause "is to be considered as any other contract provision to deter-

mine the intention of the parties" and the weight to be given to it "will vary, depending on the facts and circumstances of each particular case." *Id.* at 1377. The court then went on to reject Prall's argument, noting that Prall was a sophisticated party who was represented by counsel when the release agreement was signed. *Id.* at 1378. The court also found it persuasive that Prall "expressly stated that he was not relying upon the representation of INB in entering into the release." *Id.*[2] Additionally, the court noted that, even if he "had not unequivocally affirmed in the release he was not relying on any representations from INB, he has failed to establish reliance." *Id.* at 1379. The court continued—in the passage that would later form the basis of the *Circle Centre* decision—"A releasor, in order to avoid a release on the ground of fraud or misrepresentation, must

---

[2] As this Court has recognized, such "no-reliance" or "disclaimer of reliance" clauses "'serve a legitimate purpose in closing a loophole in contract law' by heading off a suit for fraud used as a device for trying to get around the limitations that the parol evidence rule and contract integration clauses place on efforts to vary a written contract on the basis of oral statements made in the negotiation phase." *Nightingale Home Healthcare, Inc. v. Anondyne Therapy, LLC,* 589 F.3d 881, 885 (7th Cir. 2009) (quoting *Extra Equipamentos E Exportacao Ltda. v. Case Corp.,* 541 F.3d 719, 724 (7th Cir. 2008)). "'[N]o reliance clauses are called 'big boy' clauses (as in 'we're big boys and can look after ourselves'),' and hence in some states are not enforced without an inquiry into the circumstances of its negotiation, to make sure that the signatory knew what he was doing." *Id.*

show he had a right to rely on the misrepresentation, and he did in fact rely on it in executing the release. . . . In other words, the fraud must have induced or produced the execution of the release or contributed to it as a cause." *Id.* (citing 76 C.J.S. § 27).

It is clear from the context of this passage in *Prall* and the court's citation to the Corpus Juris Secundum that the Indiana Court of Appeals was using the word "release" to denote the release agreement between Prall and INB generally, rather than the specific integration provision contained in the agreement. With this in mind, we turn to *Circle Centre*.

In *Circle Centre*, a landlord sued a tenant for unpaid rent, and the tenant brought a counterclaim for fraudulent inducement to enter into the lease. The landlord filed a motion for judgment on the pleadings as to the tenant's counterclaim based upon the inclusion of an integration clause and a no-reliance provision in the lease. The tenant acknowledged in the provision that it had "independently investigated" the project and had "not relied upon any inducements or representations on the part of the Landord or Landlord's representatives, other than those contained in the Lease." 762 N.E.2d at 177. The trial court denied the landlord's motion, and the Court of Appeals reversed, holding that the no-reliance language in the lease precluded the tenant from using the alleged prior misrepresentations to form the basis of its fraud claim. *Id.* at 178-79.

In reaching its holding, the appellate court observed that Indiana courts had addressed whether an express

integration clause barred a fraudulent inducement claim "sparingly and with varying results." *Id.* at 179. The court noted that, in *Jenkins v. Nebo Props., Inc.*, 439 N.E.2d 686, 694 (Ind. Ct. App. 1982), it had permitted parol evidence of fraud even in the face of an express integration clause, while it had not done so in *Prall. Id.* The *Circle Centre* court then analogized the case before it to *Prall* and precluded the use of parol evidence. "[J]ust as Prall represented, in effect, that he had investigated the information, [the tenant] expressly stated that it had performed its own independent investigation." *Id.*

In the course of its decision, the *Circle Centre* court cited the passage in *Prall* discussed above and decreed that the tenant, in order to overcome the integration and disclaimer provision, "would have to show both that it had a right to rely on [the landlord's] alleged misrepresentations and that it did in fact rely on them in executing *that portion of the lease which disclaims such reliance*." *Id.* at 180 (citing *Prall*, 627 N.E.2d at 1379) (emphasis added). "In other words," the court continued, "the fraud must have induced or produced the execution *of the lease disclaimer* or contributed to it as a cause." *Id.* (citing *Prall*, 627 N.E.2d at 1379) (emphasis added).

It is unclear whether the *Circle Centre* court intended these statements to be an application of the more general rule espoused in *Prall* to the particular facts before it, including the presence of an explicit no-reliance clause, or whether the court intended to announce a new categorical rule requiring a party asserting fraudulent inducement to establish fraud in the inducement of

the integration clause itself regardless of the factual circumstances. What is clear is that *Prall* did not limit the fraudulent inducement inquiry only to that portion of the agreement that disclaimed reliance, but examined the agreement as a whole. Decisions by the Indiana Court of Appeals subsequent to *Circle Centre* have adopted this broader reading of *Prall*.

The Indiana appellate court addressed this issue again in *America's Directories Inc. v. Stellhorn One Hour Photo, Inc.* In that case, the plaintiff claimed that it had been fraudulently induced into signing a three-year contract with the defendant. The form contract stated, in relevant part, that "NO VERBAL AGREEMENTS OR REPRESENTATIONS OUTSIDE OF THIS AGREEMENT HAVE BEEN MADE TO OR RELIED UPON BY PURCHASER." *Am.'s Directories*, 833 N.E.2d at 1066. At trial, the defendant proposed a jury instruction that provided, "[A]s a matter of law, any oral representations made by [defendant] to [plaintiff] cannot be fraud in the inducement because the . . . provision disclaiming reliance on such representations supercedes any prior oral representations." *Id.* at 1067. The trial court refused to adopt the proposed jury instruction. *Id.*

The Court of Appeals, again echoing *Franklin*, noted that "the determination of whether the parties intended a writing to be totally integrated must be based on all the relevant evidence," and "[t]he weight to be given an integration clause will vary depending on the facts and circumstances of each particular case." *Id.* at 1067. The court went on to affirm the trial court's refusal to give

the instruction, finding that the requested instruction "is thus an incorrect statement of law." *Id.* "Not only does the instruction ignore Indiana case law, which holds that the conclusiveness to be given an integration clause varies depending on the facts and circumstances of each case . . . it also disregards the exception to the parol evidence rule, which explicitly permits the introduction of prior statements to prove fraud in the inducement." *Id.* (citing *Circle Centre*, 762 N.E.2d at 179). In reaching its decision, the Indiana Court of Appeals in *America's Directories* cited *Circle Centre* for the general proposition that a plaintiff can rely upon parol evidence to establish fraudulent inducement as to the entire agreement, rather than limiting proof of fraudulent inducement to the integration clause itself.

*Tru-Cal, Inc. v. Conrad Kacsik Instrument Systems, Inc.*, 905 N.E.2d 40 (Ind. Ct. App. 2009), also discussed *Prall* and *Circle Centre*, but under a slightly different set of facts. In *Tru-Cal*, the plaintiff claimed it had been fraudulently induced into entering into a settlement agreement based on a forged underlying document. In response, the defendant claimed that the plaintiff could not reasonably rely upon the forged document to support a fraud claim because the integration clause in the settlement agreement disclaimed reliance on any outside representations. *Id.* at 45. The appellate court explained that, in *Prall* and *Circle Centre,* it had "acknowledged that a party could overcome the effect of an integration clause if it could show it had a right to rely on the alleged misrepresentations and did in fact rely on them in executing the release and/or integration

clause." *Id.* The court then applied a broad reading of *Prall* and *Circle Centre* to conclude, "Here, there can be no doubt that the fraud directly induced the execution of the *settlement agreement* or, at least, contributed to its cause." *Id.* at 46 (emphasis added).

The *Tru-Cal* court also was careful to recognize that the agreement did not contain a no-reliance or disclaimer provision, unlike in *Prall* and *Circle Centre. Id.* Accordingly, the *Tru-Cal* court found that this was "the type of case described in *Prall* and *Circle Ctr. Dev. Co.* where a party can overcome the effect of an integration clause and bring a fraud in the inducement claim to rescind the contract." *Id.*

Most recently, the Indiana Court of Appeals decided *Wind Wire LLC v. Finney*, 977 N.E.2d 401 (Ind. Ct. App. 2012). There, the purchasers of a wind turbine claimed that they were fraudulently induced into signing a sales contract by the seller. The sales contract contained an integration clause stating that "[i]t is understood that this Agreement and any documents which are attached hereto or referenced herein constitute the intire [sic] agreement between the parties and all other agreements, represenstion [sic], promises, inducements, statements, and understandings, prior to and contemporaneous with this Agreement, written or oral, are suspended by this Agreement." *Id.* at 403-04. The seller, relying on *Circle Centre*, argued that "the fraudulent inducement exception to the parol evidence rule only applies if the alleged misrepresentation specifically 'induced or produced the execution of the . . . disclaimer,'

as opposed to the signing of the contract generally."
*Id.* at 405.

The appellate court disagreed. While noting that Wind
Wire had "accurately quot[ed]" *Circle Centre*, the court
explained that "the proposition upon which it relies
has a broader application." *Id.* The court emphasized
the language in *Prall*, as pointed out by the court in *Tru-
Cal*, which allowed parties to argue that they were fraud-
ulently induced in "'executing the release and/or inte-
gration clause.'" *Id.* (quoting *Tru-Cal*, 905 N.E.2d at
45). Moreover, the appellate court observed that
*Circle Centre* "did not overrule the requirement that
the weight given to a contract's integration clause be
decided on a case-by-case basis." *Id.*

## D.  Returning to *Franklin* and First Principles

As the Indiana Supreme Court has explained, the
proper weight to be given to an integration clause is to
be determined on a case-by-case basis. *Franklin*, 493
N.E.2d at 166. As we have seen, among the many
factors that a court may consider is the existence of no-
reliance or disclaimer language, as well as the relative
sophistication of the parties and the circumstances sur-
rounding the agreement's execution. The imposition of
an inflexible rule that would require a party claiming
fraudulent inducement to demonstrate that he or she
was fraudulently induced to agree to the integration
clause itself would unreasonably restrict the trial court's
ability to conduct the factual analysis that the Indiana

Supreme Court requires. Accordingly, to the extent that the holding in *Circle Centre* was intended to establish such a rule, we are persuaded that the Indiana courts would return to the principles espoused in *Prall* and *Franklin* as it has in *Tru-Cal* and *Wind Wire*.

Returning to the case at hand, the Covenant states that "[t]he parties agree this agreement represents the parties' sole agreement." Although the district court recognized that "[t]his language does not specifically state that this section of the agreement is intended to be an integration clause," the court concluded that the provision constituted an express integration clause be-cause "it serves no other purpose except to act as an integration clause." We have no reason to disagree with this conclusion. Like the district court, we cannot dis-cern any other purpose for this language than to serve as an integration clause.

As for Atkinson's efforts to overcome the integration clause and rely upon parol evidence to establish fraud-ulent inducement, the district court, citing *Circle Centre,* concluded that "[a]bsent a showing by Atkinson that there was fraud in the inducement of the clause itself, the integration clause will prohibit the court from doing anything other than enforcing the [C]ovenant as written." In so doing, the district court relied upon an impermissibly narrow reading of the *Circle Centre* decision without conducting an independent assess-ment as to whether the parties actually intended the integration clause to impose such a restriction. As in *Prall* and *Circle Centre,* the district court on remand may

certainly conclude, after reviewing the evidence, that the parties intended the integration clause to permit the parties to overcome the parol evidence rule only if they can demonstrate fraudulent inducement as to the integration clause itself, rather than the agreement as a whole. The existence (or absence) of a no-reliance clause, among other factors, would be relevant to such an inquiry. But invoking a categorical rule, as the district court did here, without conducting such a case-by-case analysis, is inconsistent with the Indiana Supreme Court's pronouncements in *Franklin* and the decisions of the Indiana Court of Appeals in *Prall* and its progeny.

### III.  Conclusion

Because, in the absence of a factual inquiry, the mere presence of an integration clause does not preclude Atkinson from introducing parol evidence that it was fraudulently induced to enter into the Covenant agreement as a whole, the district court's opinion and order is REVERSED and REMANDED for further proceedings consistent with this opinion.